EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. PLINIO PÉREZ MARRERO, JUEZ, demandado; RUBÉN DE JESÚS, interventor.

*Número:* C-64-22    *Resuelto:* 23 de marzo de 1965

*Rodolfo Cruz Contreras, Procurador General Interino,* y *J. F. Rodríguez Rivera, Procurador General Auxiliar,* abogados del peticionario; *E. L. Belén Trujillo,* abogado del interventor.

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente Accidental de Sala y los Jueces Asociados Señores Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Prescribe la Regla 74 de las de Procedimiento Criminal de 1963 que "Cuando el acusado hiciere alegación de no culpable e intentare establecer la defensa de incapacidad mental en el momento de la alegada comisión del delito imputádole, o cuando su defensa fuere la de coartada, deberá, por lo menos diez días antes del juicio, presentar en el tribunal un aviso al efecto, con notificación al fiscal. Si el acusado no presentare dicho aviso no tendrá derecho a ofrecer evidencia tendente a establecer tales defensas. El tribunal podrá, sin embargo, permitir que se ofrezca dicha evidencia cuando se demostrare la existencia de causa justificada para haberse omitido la presentación del aviso. En tal caso, el tribunal podrá decretar la posposición del juicio a solicitud de El Pueblo, conceder permiso para la reapertura del caso de El Pueblo, o proveer cualquier otro remedio apropiado."

Al adoptar esta disposición Puerto Rico se sumó a las jurisdicciones que requieren una notificación anticipada de las defensas de locura [1] y coartada, [2] consagrando así estatutariamente al ministerio fiscal un medio de descubrimiento de prueba anterior a la celebración del juicio. [3] El

---

[1] Los estados que requieren la notificación de la alegación de no culpable por razón de locura o la defensa de insanidad mental al tiempo de la comisión del delito son Arizona, Arkansas, California, Colorado, Florida, Indiana, Iowa, Michigan, Utah, Vermont y Washington. Véanse, el escolio 11 en nota que aparece en 61 Mich. L. Rev. 987, 989 (1963), y Weihofen, *Mental Disorder as a Criminal Defense* (1954), págs. 241, 272.

[2] Los estados que requieren la notificación de la defensa de coartada son Arizona, Iowa, Indiana, Kansas, Michigan, Minnesota, Nueva Jersey, Nueva York, Ohio, Oklahoma, Dakota del Sur, Utah, Vermont y Wisconsin. Véase, el escolio 13 en Louisell, *Criminal Discovery: Dilemma Real or Apparent?*, 49 Calif. L. Rev. 56, 61 (1961).

[3] En general, sobre el descubrimiento de prueba en causas criminales, véanse, Brennan, *Remarks in Discovery*, 33 F.R.D. 56 (1964); Datz,

presente recurso se dirige a delimitar el alcance del descubrimiento autorizado.

# I

El fiscal presentó acusación por el delito de asesinato en primer grado contra Rubén de Jesús Díaz imputándole que en 22 de julio de 1963 acometió y agredió con un revólver a Carmen Rosa Galarza, infiriéndole heridas de carácter grave que ocasionaron la muerte de ésta. También se le acusó de una infracción al Art. 8 de la Ley de Armas. El acto de la lectura de las acusaciones tuvo lugar el día 21 de octubre siguiente y durante el mismo el acusado solicitó se le concediera un término de 10 días para formular su alegación. A ello se accedió por el tribunal a quo que además dispuso que, de no formularse alegación dentro del término indicado, se registraría una de no culpable.

El 22 de octubre, el acusado presentó varias mociones por las cuales interesaba se ordenara: (1) la comparecencia de los testigos mencionados al dorso de la acusación para ser entrevistados por el abogado defensor en uno de los salones del tribunal y en presencia de uno de los alguaciles o de un representante del ministerio público; (4) (2) la entrega de copias de las declaraciones juradas en poder del fiscal que fueron utilizadas en la determinación de causa probable; (3) la celebración de una vista preliminar conforme a la Regla 23 de las de Procedimiento Criminal de 1963; (4) la entrega de la declaración jurada tomada al acusado en el curso de la investigación hecha por el fiscal, así como copias de las fotografías tomadas para el caso, del protocolo de autopsia y del expediente criminal de los testigos de cargo.

---

*Discovery in Criminal Procedure*, 16 U. Fla. L. Rev. 163 (1963); Garber, *The Growth of Criminal Discovery*, 1 Crim. L.Q. 3 (1962); *Developments in the Law—Discovery*, 74 Harv. L. Rev. 942, 1051–1063 (1961); Louisell, *Criminal Discovery: Dilemma Real or Apparent?*, 49 Calif. L. Rev. 56 (1961); Fletcher, *Pretrial Discovery in State Criminal Cases*, 12 Stan. L. Rev. 293 (1960).

(4) Véase, *Hoyos Gómez* v. *Tribunal Superior*, 90 D.P.R. 201 (1964).

En la misma fecha se presentó un escrito que se denominó "Alegación y Notificación bajo Regla #74," que en su parte pertinente dice:

"1—Su alegación es la de no culpable por razón de que al cometer el delito imputándole [*sic*] no tenía conciencia de sus actos y/o no podía distinguir entre el bien y el mal por razón de enfermedad mental. Véase Artículo 39 inciso 6 del Código Penal de Puerto Rico.

"2—El acusado hace alegación de inocencia por razón de incapacidad mental y solicita juicio por jurado en ambos casos."

Con relación a las solicitudes y planteamientos de la defensa, compareció en 3 de diciembre el fiscal de distrito mediante moción en la cual expresó que:

"1) . . . el alcance de la Regla #74 obliga al acusado a notificar al Ministerio Público, no solamente de que su alegación va a ser de inocencia por razón de locura al momento de la comisión del delito, sino que tiene la obligación de notificar con qué testigos, esto incluye peritos psiquiatras, se propone establecer su defensa de locura.

"2) En armonía con esta posición . . . también es obligación del acusado, darle la dirección de dichos testigos, qué documentos se propone brindar, si tiene prueba documental alguna, en la vista, para sostener su defensa de locura, historial clínico, en qué hospitales y en qué fechas estuvo bajo tratamiento psiquiátrico y en qué instituciones estuvo recluído y en qué fecha.

"3) . . . que el propósito detrás de esa regla #74, no es que meramente se anuncie de que la defensa va [a] hacer alegación por razón de locura, sino que es la intención de que se ponga al Ministerio Público en la posición de saber con qué prueba cuenta el acusado para establecer su defensa.

"4) . . . para poder prepararse el Ministerio Público para hacer frente a esa defensa, el Fiscal interesa que se le suministre copia de los documentos, historial clínico y toda prueba documental que se tenga por la defensa en este caso. . . ."

El tribunal de instancia declaró sin lugar la solicitud del fiscal.

## II

Para tener una perspectiva adecuada conviene transcribir de la opinión emitida en *Pueblo* v. *Alsina*, 79 D.P.R. 46 (1956), la exposición sobre la norma de prueba que debe regir cuando se aduce la locura como eximente de responsabilidad penal. Dijimos, a las págs. 60–61, "La ley presume que el estado normal es el de la cordura, presunción justificada por la experiencia humana y por consideraciones de orden público, y por ende, que el procesado estaba en su sano juicio en el momento de perpetrar el acto que se le imputa como delito. En virtud de esa presunción El Pueblo no tiene que presentar prueba alguna para demostrar que el acusado estaba cuerdo en ese momento, *mientras* no se ofrezca y reciba evidencia que pueda engendrar duda razonable sobre la cordura, evidencia que debe ser presentada por el encausado, si es que descansa en la ausencia de sanidad mental como eximente de responsabilidad, pero que también puede provenir de la evidencia aducida por el Pueblo al presentar su caso (citas). Sin embargo, una vez que en la causa existe prueba capaz de crear esa duda, la presunción de que el acusado estaba en su sano juicio en el instante de perpetrar el acto, queda rebatida y el ministerio fiscal obligado a probar el sano juicio al igual que cualquier otro hecho. El juzgador, con vista de toda la prueba presentada en cuanto al acto imputado y a la locura, tiene entonces la obligación de determinar si el ministerio fiscal ha probado la sanidad mental del reo, su capacidad para delinquir, y si al hacerlo encuentra que tiene duda razonable sobre ello, su deber es dar el beneficio de esa duda al inculpado y absolverle. (Citas.)" Véanse, además, *Pueblo* v. *Sánchez*, 79 D.P.R. 116, 120–121 (1956) ; *Pueblo* v. *Velázquez*, CR-63-345, sentencia de 26 de junio de 1964. [5]

---

[5] Tanto la vigente Regla 146 como el anterior Art. 283 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 814, se refieren a que en tales casos el jurado expresará en su veredicto que el acusado es "no culpable por razón de locura," o "inocente a causa de demencia." Véase, *Pueblo* v. *Rivera*, CR-63-191, sentencia de 24 de febrero de 1964.

Concordante con la norma expuesta, conforme a la Regla 73 la alegación de no culpable constituye una negación de todas las alegaciones esenciales de la acusación y permite al acusado la presentación en evidencia de todos los hechos tendentes a establecer una defensa, *sujeto a lo dispuesto por las Reglas 63 y 74*. Es precisamente esta última la que requiere una notificación anticipada de que el acusado intenta valerse de la defensa de locura.

En el presente caso el acusado cumplió *voluntariamente* con las prescripciones de la Regla 74. Todo cuanto objeta es el suministrar la información que le solicita el ministerio público sobre la prueba de que intenta valerse para establecer su defensa de locura, a saber, el nombre y dirección de los testigos incluyendo los peritos psiquiatras que utilizará, y la prueba documental, incluyendo cualquier expediente clínico, así como la identificación de las instituciones en donde ha estado recluido o ha recibido tratamiento, incluyendo las fechas pertinentes. Para ello invoca a) la garantía constitucional contra la auto-incriminación; b) el carácter privilegiado de las comunicaciones entre médico y paciente; y c) la disposición contenida en el Art. 11 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 11, que impide al fiscal interrogar los testigos del acusado excepto en el acto de celebrarse el juicio público.

■ 1. La Sec. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico reconoce el derecho a no incriminarse en las siguientes palabras: "Nadie será obligado a incriminarse mediante su propio testimonio . . ." A primera vista este privilegio tan celosamente guardado parece confligir con las disposiciones estatutarias que requieren la notificación anticipada de determinada defensa en los procesos criminales. Pero a medida que se analiza detenidamente el reparo resulta más aparente que real. Es preciso apuntar que estas disposiciones en forma alguna conculcan la presunción de inocencia, pues, independientemente de que

se haga la notificación, el Estado viene siempre obligado a establecer un caso *prima facie* y no queda relevado de probar la responsabilidad del acusado fuera de duda razonable. De ahí que, aun cuando éste haya anunciado su propósito de plantear la defensa de locura o la de coartada, al concluir la prueba de cargo, si la estima insuficiente, puede optar por no presentar evidencia alguna. (⁶) Por tanto, en efecto la notificación anticipada no le expone a suministrar prueba en su contra.

Por otro lado la información requerida, por referirse a una defensa afirmativa del encausado, es de naturaleza esencialmente exculpatoria. Además, se trata de la evidencia que éste intenta utilizar en el acto del juicio. En cuanto a las defensas específicas a que se refiere la Regla 74 es de notarse que cualquier información que se suministre no tiende a establecer el caso de El Pueblo; de ahí que no pueda utilizarse como índices de prueba por el ministerio público. Por otro lado, conforme a la norma señalada en *Alsina*, supra, corresponde al acusado iniciar la presentación de la prueba que pone en *issue* su cordura al momento de la comisión del delito imputado. (⁷)

Aunque a nuestro juicio una lectura de las opiniones emitidas revela que no se ha discutido frontalmente el reparo apuntado, desde 1931 se ha sostenido la constitucionalidad de estatutos que requieren la notificación de la defensa de coartada. *State* v. *Thayer*, 176 N.E. 656 (Ohio 1931). En el mismo sentido se pronuncian *State* v. *Smetana*, 2 N.E.2d 778 (Ohio 1936); *State* v. *Kopacka*, 51 N.W.2d 495 (Wis. 1952); *State* v. *Cunningham*, 185 N.E.2d 327 (Ohio 1961);

---

(⁶) Ha sido resuelto que constituye error el comentar que el acusado manifestó su intención de descansar en la defensa de coartada y luego la abandonó o sometió el caso sin prueba. *People* v. *Mancini*, 188 N.Y.S.2d 559 (1959), 160 N.E.2d 91 (1959); *State* v. *Cocco*, 55 N.E.2d 430 (Ohio, 1943).

(⁷) La carga de la prueba para establecer la defensa de coartada corresponde también al acusado. *State* v. *Searles*, 197 A.2d 384 (N.J. 1964); *State* v. *Post*, 123 N.W.2d 11 (Iowa 1963); *State* v. *Stump*, 119 N.W.2d 210 (Iowa 1963).

*People* v. *Schade*, 292 N.Y.S. 612 (1936) ; *People* v. *Rakiec*, 23 N.Y.S.2d 607 (1940) ; *People* v. *Shulenberg*, 112 N.Y.S.2d 375 (1952). En general pueden verse, Epstein, *Advance Notice of Alibi*, 55 J. Crim. L.C. & P.S. 29 (1964), y Waddington, *Criminal Discovery and the Alibi Defense*, 37 L.A. Bull. 7 (1961).

Es en *Jones* v. *Superior Court of Nevada County*, 372 P.2d 919 (Cal. 1962), donde se discute más ampliamente la cuestión. Por la importancia que tiene nos permitimos hacer una exposición más amplia de los hechos y la decisión recaída. En un proceso por violación el acusado indicó su intención de descansar en su alegada impotencia como defensa. El tribunal de instancia declaró con lugar una moción del fiscal para el descubrimiento de todos los informes médicos y de rayos X relativos a la condición actual del acusado, el nombre y dirección de los médicos que le habían atendido antes del juicio y el nombre y dirección de los médicos que se disponía a utilizar como testigos. En apelación se sostuvo que el ministerio público tenía derecho a descubrir información relacionada con evidencia que se intentaba presentar para sustanciar una defensa exculpatoria. La decisión cobra mayor importancia si se considera que no existía disposición estatutaria alguna que requiriera al encausado la notificación previa de la defensa de impotencia que intentaba. En la parte pertinente de la opinión emitida se dice:

"Sin embargo, el ministerio público tiene derecho a descubrir los nombres de los testigos que el peticionario intenta llamar y cualesquiera informes médicos o de rayos X que intenta presentar en evidencia en apoyo de su defensa específica de impotencia. Un número de estados tienen estatutos que en causas criminales permiten o requieren el descubrimiento de la identidad de testigos que serán llamados por el acusado en relación con una defensa específica, como la de coartada (citas). Aunque ese descubrimiento puede requerir al acusado que revele información que conduzca a una refutación efectiva de su defensa, estos estatutos han sido uniformemente sostenidos frente a la alega-

ción de que violen el privilegio contra la auto-incriminación (citas). La identidad de los testigos de defensa y la existencia de los informes médicos y de rayos X que la defensa ofrecerá en evidencia necesariamente tendrán que ser reveladas en el acto del juicio. Los testigos estarán sujetos a ser contrainterrogados, y los informes estarán sujetos a estudio e impugnación. El conocimiento anticipado de la identidad de los testigos y del contenido de dichos informes meramente habilitará al ministerio público para descargar sus funciones en el juicio en una forma más efectiva. Así, 'los estatutos sobre coartada no infringen el privilegio contra la auto-incriminación. Por el contrario, establecen una regla razonable sobre las alegaciones que en manera alguna obligan a un acusado a proporcionar otra evidencia que aquella que él mismo, voluntariamente y sin compulsión, presentará en el juicio. Estos estatutos no violan el derecho de un acusado a permanecer en silencio. Más bien le advierten al acusado: Si no intenta permanecer en silencio, si se dispone a presentar una defensa de coartada, entonces debe suministrar información anticipada sobre tal hecho y sobre el lugar en donde se encontraba; pero si él personalmente y los testigos potenciales optan por no declarar en el juicio, no existe el propósito de romper ese silencio a través de ningún requerimiento de este estatuto.' (Véase, *Advance Specification of Defense in Criminal Cases*, 20 A.B.A.J. 435, 440.)

"En tanto en cuanto la orden del tribunal de instancia requiere al peticionario que revele el nombre y dirección de los testigos que intenta presentar y a producir los informes médicos y de rayos X que se dispone a ofrecer en evidencia para sostener su defensa de impotencia, no viola el privilegio contra la auto-incriminación . . . . Sencillamente requiere al peticionario que revele información que de todas formas divulgará en breve . . . ." (pág. 922.) (⁸)

La opinión de *Jones* ha sido objeto del escrutinio de los estudiosos del Derecho con especial énfasis en el posible im-

---

(⁸) La opinión disidente en *Jones* se funda en que autorizar el descubrimiento solicitado vulneraría el derecho del acusado a permanecer en silencio hasta que se le pruebe un caso *prima facie* y a que, en todo caso, corresponde al poder legislativo la iniciativa para conceder el descubrimiento a petición del ministerio público. Véase, 76 Harv. L. Rev. 838 (1963), para una refutación de esta posición.

pacto sobre el privilegio de auto-incriminación, pero decididamente el resultado a que se llegó ha recibido abrumador respaldo. Bishop, *The Self-Incrimination Privilege: Barrier to Criminal Discovery*, 51 Calif. L. Rev. 135 (1963), y comentarios en 39 Wash. L. Rev. 853, 861 (1964); 61 Mich. L. Rev. 987 (1963); 76 Harv. L. Rev. 838 (1963); 49 Iowa L. Rev. 176 (1963); 10 U.C.L.A. L. Rev. 937 (1963); 63 Colum. L. Rev. 361 (1963); 15 Stan. L. Rev. 700 (1963); 35 U. Colo. L. Rev. 290 (1963); 8 Vill. L. Rev. 110 (1962); Anotación, *Right of prosecution to pretrial discovery, inspection and disclosure*, 96 A.L.R.2d 1213 (1964).

■ En el presente caso concurre la circunstancia adicional de que el acusado *voluntariamente* hizo la notificación de que intenta valerse de la defensa de locura como eximente de su responsabilidad criminal. Tal actuación constituye una renuncia limitada de cualquier derecho a no incriminarse que pudiera concebiblemente estar envuelto en el caso. 49 Iowa L. Rev. 176, 182, especialmente los casos citados en el escolio 29; 10 U.C.L.A. L. Rev. 937, 939; cf. *Pueblo* v. *Aspurúa*, 61 D.P.R. 252 (1943). Su ataque se reduciría, no a la constitucionalidad de la Regla 74, sino a la forma en que el ministerio público pretende que se instrumente.

■ A este último respecto no podemos hacer caso omiso del desarrollo y los factores que se han considerado para, por interpretación judicial, conceder al acusado el derecho al descubrimiento de prueba en distintas etapas del encausamiento penal. Repetidamente hemos afirmado que el proceso criminal no es lidia deportiva para determinar el mejor de los gladiadores y que su propósito cardinal es el descubrimiento de la verdad. *Pueblo* v. *Tribunal Superior*, 80 D.P.R. 702 (1958); *Pueblo* v. *Ribas*, 83 D.P.R. 386 (1961); *Pueblo* v. *Galeano*, 83 D.P.R. 521 (1961). Por eso debemos garantizar un procedimiento que conduzca a la presentación de la evidencia adecuada que sea pertinente a la controversia de hechos, evitando hasta donde sea posible que la sorpresa y

ocultación—resultado inevitable del sistema adversativo—oscurezcan e impidan la búsqueda de la verdad. Tradicionalmente la formulación de reglas de evidencia y de descubrimiento ha sido una función judicial, resultado de la experiencia diaria en la consideración de las causas civiles y criminales. Nada nos debe impedir darle el contenido debido a la Regla 74 para que pueda operar como una medida efectiva en el curso de los procedimientos, salvaguardando siempre cualquier garantía constitucional que se reconozca al encausado. (⁹)

■ 2. No es de aplicación el privilegio invocado sobre comunicaciones entre médico y paciente. La letra clara del Art. 40 de la Ley de Evidencia—Art. 402 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1734—se refiere al examen en acciones *civiles* respecto a alguna información adquirida mientras asistía al enfermo, la cual era necesaria para recetar para dicho enfermo o resolver lo conveniente. Cf. Regla 207(2) del Proyecto de Reglas de Evidencia de 1958. (¹⁰)

---

(⁹) Cada día es más marcada la tendencia a que, al igual que en el procedimiento civil, el descubrimiento de prueba en las causas criminales responda al criterio de reciprocidad. Prueba elocuente de ello son las enmiendas propuestas a las Reglas 12, 15 y 16 de las Reglas Federales de Procedimiento Criminal, y especialmente la recomendación de un nuevo inciso (c) a la Regla 16, que autorizaría al tribunal a condicionar el descubrimiento solicitado por el acusado a que éste permita al Estado inspeccionar la evidencia que aquél se disponga a presentar. Wright, *Proposed Changes in Federal Civil, Criminal and Appellate Procedure*, 35 F.R.D. 317, 325–331 (1964).

(¹⁰) En 14 de marzo de 1963 se presentó en la Cámara de Representantes un proyecto de ley—P. de la C. 720—para enmendar el inciso 4 del Art. 40, con especial énfasis a los médicos psiquiatras, con el siguiente texto:

"4. Un médico, médico psiquiatra o cirujano, o el ayudante de cualquiera de éstos, no podrá, sin el consentimiento del paciente, ser examinado con referencia a ninguna comunicación hecha por éste a aquél en el curso de su relación como médico y paciente, o a alguna información adquirida por el médico, médico psiquiatra o cirujano, mientras asistía al enfermo. Este privilegio será extensivo a los récords de los hospitales públicos y privados en tanto en cuanto éstos contengan información referente al diagnóstico y tratamiento obtenido a base de las comunicaciones

3. Tampoco entra en juego en este caso el Art. 11 del Código de Enjuiciamiento Criminal pues el fiscal se ha limitado a solicitar que se le informe el nombre de los testigos que utilizará el acusado para probar su insanidad mental al momento de la comisión del delito.

■ A nuestro juicio, de prevalecer la contención del interventor en que a lo sumo descartados sus reparos, el ministerio público sólo tiene derecho a que se le informe que el acusado intenta valerse de la defensa de locura, pero no a información adicional que ponga al fiscal en condiciones de allanarse, si así se desprende de su investigación, o de enfrentarse a la misma, en caso contrario, resultaría prácticamente ilusoria y horra la innovación que se introdujo al aprobarse la Regla 74. Es cierto que se eliminaría el elemento de sorpresa, pero se demoraría injustificadamente el proceso. Por eso, procede que le demos contenido real a la disposición que interpretamos, como se hizo en California, aun en ausencia de disposición estatutaria. Con ello no hacemos más que propiciar el descubrimiento de la verdad.

*Se dejará sin efecto la resolución dictada por el Tribunal Superior, Sala de San Juan, en 3 de enero de 1964, y se devolverá el caso para que se dicte una orden dirigida al acusado para que suministre al ministerio público la siguiente información: (a) el nombre y dirección de los testigos, incluyendo los peritos, que se dispone a utilizar para establecer la defensa de locura, excluyendo su propio testimonio y,*

necesarias que hubieren existido entre el médico y el paciente; pero este párrafo no será aplicable a una acción entre el médico, médico psiquiatra o cirujano y su cliente en la que se ventilare el tratamiento del enfermo por el médico, médico psiquiatra o cirujano; disponiéndose, que un médico, médico psiquiatra o cirujano será competente para testificar sobre la causa de la muerte de cualquier persona y sobre el estado mental o físico de una parte en un pleito de naturaleza civil o del acusado en un proceso criminal, cuando tal estado mental o físico estuviere en controversia."

Véase, el voto disidente del Juez Asociado señor Goldberg, del Tribunal Supremo federal, en *Spencer* v. *California,* 377 U.S. 1007, 12 L.Ed.2d 1055.

*(b)* la prueba documental que se dispone a utilizar para sustanciar tal defensa. *Cf. Pueblo* v. *Aspurúa,* supra.