En el Tribunal Supremo de Puerto Rico

| EL PUEBLO DE PUERTO RICO       Recurrido    V.   PABLO PEREZ VELAZQUEZ       Peticionario | Certiorari   99TSPR25 |
|---|---|

Número del Caso: CC-97-647

Abogados de la Parte Peticionaria: Lic. Sylvia Juarbe Berrios
Lic. Enrique Miranda Merced

Abogados de la Parte Recurrida: Hon. Carlos Lugo Fiol
Procurador General

Lic. Yasmín Chaves Dávila
Procuradora General Auxiliar

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, CAROLINA

Juez del Tribunal de Primera Instancia: Hon. Eliadís Orsini Zayas

Tribunal de circuito de Apelaciones: CIRCUITO REGIONAL VII

Juez Ponente: Hon. Negroni Cintrón

Panel Integrado por:  Pres. Juez Arbona Lago y los Jueces Salas Soler y Negroni Cintrón

Fecha: 3/19/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Demandante-recurrido

       v.                       CC-97-647        Certiorari

Pablo Pérez Velázquez

    Demandado-peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 19 de marzo de 1999

I

El Ministerio público acusó a Pablo Pérez Velázquez de Asesinato en Primer Grado, Tentativa de Asesinato, Agresión Agravada, Amenazas e infracción a los Arts. 8 y 6 de la Ley de Armas.

Al amparo de la Regla 74 de Procedimiento Criminal, Pérez Velázquez notificó la **defensa** de **estado mental transitorio**. Código Penal, Art. 32.[1]

El Tribunal de Primera Instancia, Sala de Carolina Hon. Eliadis Orsini Zayas), no admitió dicha defensa debido a que estaba basada en testimonios del personal de evaluaciones y servicios

---

[1] 33 L.P.R.A. sec. 3154.

del Programa de Salud Mental Correccional, mientras Pérez Velázquez estuvo sumariado. Concluyó que evidencia así originada no era pertinente bajo las Reglas 18 y 19 de Evidencia. Pérez Velázquez reiteró su anuncio y que además, en apoyo de su defensa, presentaría como perito contratado al Dr. Luis A. Escabí Pérez.

En certiorari, el Tribunal de Circuito de Apelaciones (Hons. Arbona Lago, Salas Soler y Negroni Cintrón), revocó. Autorizó la presentación del testimonio del Dr. Antonio Capó Mártir, sicólogo del referido Programa, y otras evaluaciones allí realizadas. El Ministerio Público acató dicho dictamen, y oportunamente solicitó a Instancia orden para evaluar a Pérez Velázquez con su propio perito, el psiquiatra Dr. Raúl López Menéndez, quien en ese momento había cesado de prestar servicios en el aludido Programa de Salud Mental Correccional. Argumentó que sin esa evaluación se afectaría el derecho a prepararse adecuadamente y estar en igualdad de condiciones para rebatir o aceptar la prueba del estado mental transitorio de Pérez Velázquez, por voz de sus tres peritos.

Con la oposición de Pérez Velázquez, Instancia accedió y le ordenó coordinar con el Ministerio Público su disponibilidad y evaluación psiquiátrica con el Dr. López Menéndez. En reconsideración, el Tribunal se sostuvo y declaró sin lugar los planteamientos formulados sobre alegados problemas éticos y conflictos de interés del Dr. López Menéndez. Concluyó que no existía conflicto alguno ni aspectos de confidencialidad que proteger. **Aclaró que**

**el Dr. López Menéndez jamás entrevistó al imputado mientras estuvo sumariamente confinado**. Pérez Velázquez acudió al Circuito de Apelaciones, el cual **confirmó**. Inconforme presentó este recurso.

Ante nos reproduce su contención. En esencia, aduce que la orden de Instancia viola su derecho a no autoincriminarse y a estar debidamente asistido de abogado durante todas las etapas críticas del proceso. Invoca los Art. II, Sec. 11 de nuestra Constitución, Enmiendas Quinta y Sexta federal, y la Regla 74 de Procedimiento Criminal. A juicio suyo, no debe permitirse la evaluación por el Dr. López Menéndez, bajo contrato con el Depto. de Justicia, pues fue Director del <u>Programa de Salud Mental Correccional</u>. Aunque dicho galeno no lo entrevistó, nos postula que bajo el esquema de "equipo multidisciplinario" del programa, prestó allí servicios psiquiátricos, generando ello un serio conflicto de intereses. Revisamos.

## II

Ante la defensa de **estado mental transitorio**, ¿puede obligarse a un acusado ser evaluado por un perito del Ministerio Fiscal? ¿Qué medidas debemos adoptar para proteger sus derechos?

El Art. II, Sec. 11 de nuestra Constitución establece que "[n]adie será obligado a incriminarse mediante su propio testimonio...". En el pasado, en múltiples ocasiones hemos sostenido la constitucionalidad de los requisitos de la notificación de la defensa de incapacidad mental o coartada de la Regla 74. Como se sabe, ésta exige

que en determinado término la notifique al Tribunal y Ministerio Fiscal y, suministre el nombre e información personal de los testigos y documentos que la apoyan. También le requiere informar los hospitales y fechas en que recibió tratamiento y/o los médicos que lo atendieron.

Así en Pueblo v. Tribunal Superior, 101 D.P.R. 133, 136 (1973) –al igual que en Pueblo v. Tribunal Superior 92 D.P.R. 116 (1965)–[2] **resolvimos que la Regla 74 no violaba el privilegio a no autoincriminarse**. Tampoco el debido procedimiento de ley, ni un juicio justo. Explicamos que la misma responde al imperativo de "[p]oner al Ministerio Público en condiciones de confrontarse con una defensa de coartada o locura. Usualmente estas defensas se presentaban en el juicio sin tiempo suficiente para que el fiscal investigara los hechos, verificara la certeza de los mismos y se preparara adecuadamente para refutarlos."

En Pueblo v. Rosaly Soto, 128 D.P.R. 729 (1991), aclaramos ciertas dudas acerca de la admisibilidad de la información suministrada por el acusado a fiscalía. Decidimos que dicha información no podía ser utilizada por el Ministerio Fiscal cuando el acusado retiraba su defensa, o no presentaba la prueba sobre esa defensa, que lo llevó a suministrar esa información. Inspirados en la

---

[2] En ese mismo caso, expresamos que "[e]l acusado voluntariamente hizo la notificación de que intenta valerse de la defensa de locura como eximente de su responsabilidad criminal. Tal actuación constituye una renuncia limitada de cualquier derecho a no incriminarse que pudiera concebiblemente estar envuelto en el caso." Citas omitidas. (Pág. 126).

Regla 12.1(f) federal,[3] resolvimos que "únicamente puede hacer uso de -y presentar en evidencia- prueba obtenida como consecuencia de la aplicación de las disposiciones de la citada Regla 74 de Procedimiento Criminal **cuando el imputado de delito efectivamente presenta la defensa de coartada durante el proceso**. La solución contraria, repetimos, atentaría contra la cláusula constitucional que protege a todo acusado contra la autoincriminación." (Págs. 743-744).

III

Reafirmamos esos pronunciamientos y la constitucionalidad de la Regla 74. Ahora bien, es claro que su lenguaje no cubre expresamente la situación de autos. Guarda silencio: ni provee ni prohibe al Ministerio Fiscal evaluar a un acusado.

En las propias Reglas, la normativa que más se aproxima a la orden de Instancia es la Regla 240 sobre capacidad mental de un acusado para ser procesado y el procedimiento para determinarla. **Su inciso (a) dispone que el tribunal, <u>motu propio</u>, designe uno o varios peritos para que lo examinen y presten testimonio sobre su estado mental en ese momento (procesabilidad)**. Al igual que la Regla 74, tampoco la Regla 240 visualiza evaluar la posible inimputabilidad del acusado al momento de los

---

[3] Nuestra Regla 74 agrupa las defensas de coartada y locura. Las reglas federales las separan dentro de la **misma Regla 12:** la 12.1 sobre coartada; la 12.2 sobre locura. 18 U.S.C.A. R. 12.1 (f).

alegados hechos delictivos.[4] Estamos pues ante una laguna que nos obliga repasar someramente el origen de la Regla 74.

La misma provino de la Sec. 1016 del Código Penal de California. Similar a la nuestra, allá el acusado tiene que notificar la defensa antes de comenzar el juicio, pero a diferencia, no dispone sobre información que tiene que notificar al Ministerio Fiscal. Bajo la Sec. 1026, se juzga al acusado presumiendo su sanidad mental al momento de los hechos. Si se le encuentra culpable, procede que el mismo jurado o uno nuevo determine si estaba o no incapacitado mentalmente cuando los cometió. Respecto a la evidencia, la Sec. 1027 ordena al tribunal "seleccionar y nombrar tres, psiquiatras, o sicólogos licenciados que tengan grado doctoral en sicología y al menos cinco años de experiencia postgraduada en diagnóstico y tratamiento de desórdenes emocionales y mentales, para examinar al acusado e investigar su estado mental." (Traducción nuestra).

**El Código de California ordena la evaluación del acusado por un perito, pero distinto a lo acontecido en el caso de autos, es seleccionado y nombrado por el propio tribunal, no el Ministerio Fiscal.**

En el ámbito federal, la Regla 12.2(c) provee que, a moción del Fiscal, se ordene al acusado someterse a

---

[4] A modo de paréntesis, es importante señalar la diferencia entre **inimputable y procesable**. En el primero, el acusado está apto para ser juzgado, pero al momento de cometer el delito no comprendía la criminalidad de su acto dado a una condición mental. La otra, por una condición mental al momento del juicio, no puede ser procesado pues se violaría su derecho a asistir su defensa.

evaluación. Esa evaluación psicológica o psiquiátrica sobre determinación de existencia de locura al momento del delito, **será ante un evaluador designado por el tribunal** –tiene que ser un psiquiatra licenciado o certificado, o un sicólogo clínico–, o si el tribunal lo cree necesario, por más de uno, quien oportunamente le rendirá un informe con ciertas especificaciones y copias a las partes. (18 U.S.C.A. secs. 4244; 4247).

Además, la regla 12.2(c), **en protección del los derechos del acusado**, preceptúa que "[n]inguna declaración hecha por el acusado en el curso de la evaluación, provista por esta regla, siendo esta evaluación con o sin consentimiento del acusado, ningún testimonio por el perito basado en dichas declaraciones, y ningún otro fruto de la declaración puede ser admitido en evidencia contra el acusado en algún procedimiento criminal con excepción al asunto respectivo a la condición mental que el acusado ha presentado su testimonio."[5] (Traducción nuestra).

Vemos pues, que la regla federal permite, como la de California, que a solicitud del Fiscal se evalúe al acusado cuando éste levanta la defensa de locura. **Ambas**

---

[5] Los intentos de declarar la Regla 12.2 violatoria del derecho a no autoincriminarse de la Enmienda V, fueron rechazados desde U.S. v. Byers, 740 F. 2d. 1104 (1984); U.S. v. Madrid, 673 F. 2d. 1114 (1982) U.S. cert. denied 459 U.S. 843; U.S. v. Leonard, 609 F. 2d. 1163 (1980); Walker v. Butterworth, 599 F. 2d. 1074 (1979); U.S. cert. denied in 444 U.S. 937; U.S. v. Reilsteek, 535 F. 2d. 1030 (1976); U.S. v. Cohen, 530 F. 2d. 43 (1975), U.S. cert. denied 429 U.S. 855; U.S. v. Trapnell, 495 F. 2d 22 (1974), U.S. cert. denied in 419 U.S. 851; U.S. v. Baird, 414 F. 2d 700 (1969), U.S. cert. denied in 396 U.S. 1005.

**presentan, como característica común, que es el tribunal el que escoge y designa al perito, no el Ministerio Fiscal.** La regla federal claramente limita su ámbito evidenciario: ni las declaraciones del acusado al perito, como tampoco el testimonio del perito en cuanto a las declaraciones del acusado, ni otro fruto de la evaluación, **son admisibles contra el acusado en otra etapa o proceso, que no sea el de determinar su estado mental al momento de los hechos delictivos.** Ciertamente estas salvaguardas son suficientes para garantizar su derecho a no autoincriminarse.

En resumen, el ordenamiento penal procesal de California y las reglas federales se asemejan a la Regla 74 al requerir la notificación oportuna de la defensa de locura. Parten de la premisa de que el Ministerio Fiscal tiene necesidad de prepararse ante la prueba pericial, inherentemente compleja, que puede presentar un acusado con sus peritos.

Sin embargo, aquellas con mejor balance, nos revelan una mayor intervención del Poder Judicial. Al autorizar al tribunal que seleccione y nombre al perito, rechazan que sea el Ministerio Fiscal. De este modo superan la desventaja y, simultáneamente, logran un balance que salvaguarda el derecho del acusado a no autoincriminarse.

IV

La ausencia de una regla de procedimiento criminal que expresamente provea la solución no es obstáculo para la recta adjudicación del recurso. Precisamente en <u>Pueblo</u>

v. <u>Sánchez Torres</u>, 102 D.P.R. 499, 500 (1974), resolvimos que "[l]os tribunales tienen la facultad inherente de proveer procedimientos y complementar los ya establecidos y llenar vacíos procesales, siempre que no contravengan lo dispuesto por estatuto."[6] Para "[l]ograr inyectarle rapidez a los procesos y facilitar la búsqueda de la verdad –factores básicos en el quehacer de administrar justicia– hemos suplementado jurisprudencialmente, y en limitadas ocasiones, las insuficiencias de las normas vigentes en las **reglas de procedimiento** civil y **criminal** y en la Ley de Evidencia en perfecta congruencia con el diseño general constitucional". <u>Meléndez</u> v. <u>Levitt & Sons de P.R.</u>, 104 D.P.R. 797, 809 (1976).

Con ese mismo espíritu llenamos este vacío procesal mediante interpretación analógica. Con el beneficio de la norma federal y de California, incorporamos y hacemos extensible la filosofía actual de nuestra Regla 240 –que rige la evaluación psiquiátrica del acusado en torno a su procesabilidad al momento de juicio–, a los efectos **de que el Tribunal, a solicitud del Ministerio Fiscal, pueda ordenarle en etapa posterior someterse a una evaluación por un perito, nombrado por el propio tribunal.**[7]

Además, para salvaguardar **los derechos del acusado,** ninguna declaración suya en el curso de esa evaluación,

---

[6] <u>González</u> v. <u>Tribunal Superior</u>, 75 D.P.R. 585 (1953) y <u>Urrutia</u> v. <u>A.A.A.</u>, 103 D.P.R. 643 (1975).

[7] Compárese el trámite dispuesto en la Regla 59 de Evidencia sobre nombramiento judicial.

ningún testimonio por el perito basado en dichas declaraciones, y ningún otro fruto de la declaración, será admisible en evidencia contra el acusado en algún procedimiento criminal, con excepción del asunto referente a su condición mental.

El trámite aquí pautado, claro está, no impide de forma alguna, que además del perito nombrado por el Tribunal, la defensa o el Ministerio Fiscal, presenten sus respectivos peritos. Sin embargo, el designado por el Tribunal será el **único** que puede evaluar directa y personalmente al acusado a petición del Ministerio Público. **En otras palabras, el Ministerio Fiscal no tiene derecho a requerirle al acusado que sea evaluado por su perito**.

V

A la luz de lo antes expuesto, el Circuito de Apelaciones **incidió** al confirmar la orden de Instancia de que el acusado Pérez Velázquez se sometiera a una evaluación psiquiátrica con el Dr. López Menéndez, perito del Ministerio Fiscal.

Independientemente de la improcedencia del planteamiento de Pérez Velázquez sobre conflicto de intereses[8] –bajo la tesis de equipo multidisciplinario–, esa orden

---

[8] En <u>López Hernández</u> v. <u>Centro de Mayagüez</u>, res. en 12 de junio de 1998, resolvimos que para que se configure un conflicto de intereses bajo la Ley de Etica Gubernamental, 3 L.P.R.A. sec. 1824(e), es menester "**[q]ue el empleado gubernamental haya participado antes en el asunto en cuestión de <u>manera personal y sustancial</u>**."

viola su derecho a no autoincriminarse; **significó obligarlo a declarar ante un agente del Ministerio Fiscal**.

En su defecto, el Tribunal de Instancia seleccionará y nombrará un perito para que en un término razonable evalúe su estado mental al momento de los alegados hechos delictivos. Dicho perito someterá su informe al tribunal, con copias al Ministerio Fiscal y abogado de Pérez Velázquez. Además, con sujeción a los límites evidenciarios antes indicados, estará disponible para testificar a petición de cualesquiera de las partes, luego de que Pérez Velázquez haya presentado prueba sobre su defensa de locura.

Se dictará la correspondiente Sentencia.


ANTONIO S. NEGRON GARCIA
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Demandante-recurrido

       v.                      CC-97-647      Certiorari

Pablo Pérez Velázquez

    Demandado-peticionario

SENTENCIA

San Juan, Puerto Rico, a 19 de marzo de 1999

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta Sentencia y revoca la del Tribunal de Circuito de Apelaciones que confirmó al Tribunal de Primera Instancia. El Tribunal de Primera Instancia seleccionará y nombrará perito para que en un término razonable evalúe el estado mental de Pablo Pérez Velázquez al momento de los alegados hechos delictivos. Dicho perito someterá su informe al tribunal, con copias al Ministerio Fiscal y al abogado de Pérez Velázquez. Además, con sujeción a los límites evidenciarios antes indicados, estará disponible para testificar a petición de cualesquiera de las partes, luego de que Pérez Velázquez haya presentado prueba sobre su defensa de locura.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión Disidente a la cual se une la Juez Asociada señora Naveira de Rodón.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

**El Pueblo de Puerto Rico**

     **Demandante-recurrido**

         **vs.**                    **CC-97-647**         **CERTIORARI**

**Pablo Pérez Velázquez**

     **Demandado-peticionario**

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ
A LA CUAL SE UNE LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN

San Juan, Puerto Rico a 19 de marzo de 1999

A la decisión que hoy emite una mayoría de los integrantes del Tribunal en el presente caso, curiosamente, le es aplicable el refrán popular --producto el mismo de esa innata sabiduría que posee el pueblo puertorriqueño-- a los efectos de que, en ocasiones, "el remedio resulta peor que la enfermedad".

So color de "salvaguardar los derechos" de los imputados de delito en nuestra jurisdicción, el Tribunal establece en el día de hoy una norma que tendrá, <u>en la práctica</u>, un efecto perjudicial y devastador para todo imputado de delito que presente, como defensa, la incapacidad mental. <u>Veamos</u>.

El derecho que garantiza la Constitución del Estado Libre Asociado de Puerto Rico --en la Sección 11 del Artículo II de la referida Constitución-- a los efectos de que nadie "...será obligado a incriminarse mediante su propio testimonio..." es uno de los derechos más importantes, y fundamentales, del procedimiento criminal vigente en nuestro País; siendo los otros, naturalmente, el que ninguna persona "será privada de su libertad ... sin el debido proceso de ley", que "el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra", que la culpabilidad o inocencia de un acusado será dilucidada en un "juicio rápido y público", por un jurado o juzgador imparcial, y que todo acusado disfrutará de la "presunción de inocencia", viniendo en la obligación el Estado de probar su culpabilidad más allá de duda razonable. Véase: Secciones 7 y 11 del Artículo II de la mencionada Constitución.

Debido, precisamente, a la garantía constitucional contra la autoincriminación es que, como hemos expresado anteriormente, este privilegio, tan celosamente guardado, "...parece confligir con las disposiciones estatutarias que requieren la notificación anticipada de determinada defensa en los procesos criminales", Pueblo v. Tribunal Superior, 92 D.P.R. 116, 122 (1965), y con la obligación, también estatutaria, que requiere que el acusado no sólo notifique, por adelantado, la defensa de coartada o locura que piensa utilizar en la vista en su fondo del caso, sino que brinde al ministerio público cierta y determinada información sobre la misma. Pueblo v. Tribunal Superior, 101 D.P.R. 133 (1973); Pueblo v. Rosaly Soto, 128 D.P.R. 729 (1991).

Nos referimos, naturalmente, a las disposiciones de la vigente Regla 74 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 74, la cual, en lo pertinente y en síntesis, requiere que el imputado de delito que alega ser inocente, por razón de incapacidad mental, de la comisión de los hechos que se le imputan, viene en la obligación de notificar al ministerio fiscal,

en un término especificado en la referida Regla 74[9], de su intención de utilizar dicha defensa en la vista en su fondo del caso, y, además, de suministrar cierta información al respecto.[10]

Un examen, y análisis, tanto de nuestras decisiones como de las decisiones emitidas en los distintos foros estatales norteamericanos y en el foro federal, revela que se han brindado varias razones, o fundamentos, para sostener la constitucionalidad de la obligación así impuesta a los imputados de delito, ello no obstante la existencia de la garantía constitucional contra la autoincriminación.[11] Nos atrevemos a decir que, en términos generales, dicho análisis revela que las razones, o fundamentos, principales para sostener la constitucionalidad de las disposiciones en controversia son: la búsqueda de la verdad, el hacer cumplida justicia, y los principios

---

[9] Dentro de los veinte (20) días siguientes al acto de la lectura de la acusación, en los casos en que deba celebrarse dicho acto; cuando se hubiere entregado personalmente al acusado una copia de la acusación, dentro de los veinte (20) días desde que el acusado hubiere respondido; y cuando éste no hubiere contestado, dentro del término de veinte (20) días, después que se registre la alegación de no culpable.

[10] A solicitud del ministerio público, el acusado deberá suministrar:

(a)   Los nombres de los testigos con los que se propone establecer la defensa de la incapacidad mental.
(b)   La dirección de dichos testigos.
(c)   Los documentos a ser utilizados para sostener la defensa y de no poseerlos, informar en poder de quién se encuentran tales documentos.
(d)   Hospital u hospitales en que estuvo recibiendo tratamiento y las fechas en que lo recibió.
(e)   Médicos o facultativos que hubiesen tratado o atendido al imputado en relación con su incapacidad mental.

[11] Este Tribunal ha expresado, entre otras cosas, que estas disposiciones "en forma alguna cancelan la presunción de inocencia, pues, independientemente de que se haga la notificación, el Estado viene siempre obligado a establecer un caso *prima facie* y no queda relevado de probar la responsabilidad del acusado fuera de duda razonable"; que "...la información requerida, por referirse a una defensa afirmativa del encausado, es de naturaleza esencialmente exculpatoria"; que, en cuanto a las disposiciones de la citada Regla 74, "...es de notarse que cualquier información que se suministre no tiende a establecer el caso de El Pueblo; de ahí que no puede utilizarse como índices de prueba por el ministerio público"; que "...el proceso criminal no es lidia deportiva para determinar el mejor de los gladiadores y que su propósito cardinal es el descubrimiento de la verdad [citas omitidas]. Por eso debemos garantizar un procedimiento que conduzca a la presentación de la evidencia adecuada que sea pertinente a la controversia de hechos, evitando hasta donde sea posible que la sorpresa y ocultación --resultado inevitable del sistema adversativo-- oscurezcan e impidan la búsqueda de la verdad". Véase: Pueblo v. Tribunal Superior, ante, a las páginas 122, 123, 126 y 127.

Hemos dicho, además, que al sostener la constitucionalidad de la Regla 74, hemos reconocido "...la necesidad de atenuar las dificultades inherentes del sistema adversativo suprimiendo la posibilidad de sorpresa y ocultación que lesionan el proceso de hacer justicia"; que el "...requisito de notificación [de las defensas requeridas por la citada Regla 74] se apoya en (...3) sólidas y convenientes razones de orden procesal", ya que el mismo, entre otros, elimina "...el elemento de sorpresa y ocultación en el juicio que entorpece la búsqueda de la verdad, ...acelera los procedimientos en beneficio de una justicia rápida y económica, ..."; lo cual, necesariamente nos lleva a interpretar la mencionada Regla 74 "...promoviendo su eficacia como instrumento procesal útil para el descubrimiento de la verdad, que es valor supremo en la administración de la justicia". Véase: Pueblo v. Tribunal Superior, ante, a las páginas 135, 146, 137 y 138.

elementales de "juego limpio" ("fair play") que deben permear, o regir, todo procedimiento judicial.

Dichos principios, obviamente, fueron los que llevaron a este Tribunal a resolver --en Pueblo v. Rosaly Soto, 128 D.P.R. 729 (1991)-- que cuando el imputado de delito, en el ejercicio de su derecho a no presentar prueba alguna, decide no presentar prueba sobre la defensa que ya había anunciado en cumplimiento de las disposiciones de la citada Regla 74, el Estado está impedido de presentar en evidencia prueba alguna que haya obtenido del imputado como consecuencia de la aplicación de la mencionada disposición reglamentaria.

II

Expresado lo anterior, atendemos la controversia principal y específica que plantea el recurso hoy ante nuestra consideración, cual es: ¿tiene derecho el ministerio fiscal a examinar al acusado, con un perito psiquiatra de su propia selección, que ha notificado que se propone plantear como defensa en la vista en su fondo del caso la defensa de incapacidad mental?

A diferencia de, y contrario a, la mayoría de los integrantes del Tribunal, contestamos la referida interrogante en la afirmativa. Ello así ya que entendemos, por las razones que expresaremos a continuación, que ello no sólo resulta menos lesivo a los derechos del imputado de delito, sino que promueve la búsqueda de la verdad, el que se haga una mejor justicia, y responde, más favorablemente, a los principios de "juego limpio".[12]

III

De entrada, y con el propósito de enfocar correctamente la controversia hoy ante nuestra consideración, resulta imperativo que citemos, y transcribamos, unas expresiones que hiciera este Tribunal hace más de cuatro (4) décadas en Pueblo v. Alsina, 79 D.P.R. 46 (1956). Allí, a las páginas 60-61, expresamos, en lo pertinente, que:

> "La ley presume que el estado normal es el de la cordura, presunción justificada por la experiencia humana y por consideraciones de orden público, y por ende, que el procesado estaba en su sano juicio en el momento de perpetrar el acto que se le imputa como delito. En virtud de esa presunción El Pueblo

---

[12] Naturalmente, y con el propósito de garantizar los derechos del acusado, ninguna declaración hecha por éste, en el transcurso de la evaluación, así como ningún testimonio del perito, basado en dichas declaraciones, será admisible como prueba contra el acusado en procesos criminales, con excepción de lo referente al asunto de su inimputabilidad al momento de los hechos.

no tiene que presentar prueba alguna para demostrar que el acusado estaba cuerdo en ese momento, *mientras no se ofrezca y* *reciba evidencia que pueda engendrar duda razonable sobre la* *cordura*, evidencia que debe ser presentada por el encausado, si es que descansa en la ausencia de sanidad mental como eximente de responsabilidad, pero que también puede provenir de la evidencia aducida por el Pueblo al presentar su caso (citas). Sin embargo, una vez que en la causa existe prueba capaz de crear esa duda, la presunción de que el acusado estaba en su sano juicio en el instante de perpetrar el acto, queda rebatida y el ministerio fiscal obligado a probar el sano juicio al igual que cualquier otro hecho. El juzgador, con vista de toda la prueba presentada en cuanto al acto imputado y a la locura, tiene entonces la obligación de determinar si el ministerio fiscal ha probado la sanidad mental del reo, su capacidad para delinquir, y si al hacerlo encuentra que tiene duda razonable sobre ello, su deber es dar el beneficio de esa duda al inculpado y absolverle. (Citas.)" (Énfasis suplido.)

Traído lo expresado hace más de cuarenta (40) años por este Tribunal al día de hoy, ello todavía significa que el Estado no tiene, de ordinario, que probar, como elemento del delito, la cordura del acusado por cuanto la ley sigue presumiendo la misma. Ahora bien, una vez el imputado de delito, en cumplimiento de las disposiciones de la mencionada Regla 74, notifica al ministerio fiscal que se propone plantear la defensa de locura, como eximente de responsabilidad, no hay duda de que el Estado no sólo tiene el derecho a prepararse adecuadamente para la misma, sino que viene en la obligación de probar, de manera afirmativa, la cordura del acusado más allá de duda razonable en la vista en su fondo del caso, una vez se presenta prueba que engendre duda sobre la cordura del acusado.

Esa obligación de probar la cordura del acusado, como un elemento adicional, no es función del foro judicial; como expresáramos, la misma claramente es obligación y función del ministerio público. Es por ello que constituye un serio y grave error resolver, como lo hace la Mayoría, que el perito psiquiatra que, en definitiva, va a coincidir con, o refutar, el criterio a ser expresado por el psiquiatra que tenga a bien presentar el acusado, debe ser nombrado por el foro judicial. En el sistema adversativo que rige en nuestra jurisdicción, repetimos, la obligación de probar todos los elementos del delito imputado más allá de duda razonable —incluyendo la cordura del acusado, en los casos apropiados— claramente le corresponde al Estado.

Asimismo, la decisión de la Mayoría de otorgar al tribunal la facultad de nombrar un perito "del tribunal" para evaluar la capacidad mental del acusado el día de los hechos sólo converge con el sistema inquisitivo inglés. Para adoptar la tesis de éstos, simplemente tendríamos que hacer un ligero cambio del sistema de adversarios a uno inquisitivo.

"*Examinadlo todo y retened lo bueno.*" 1ra Tesalonicenses 5, 21. La Mayoría, so color de que en el estado de California y en la Regla 12.2(c) de Procedimiento Criminal Federal se permite semejante situación, incorpora un procedimiento desafortunado por demás. El mero hecho de que en otra jurisdicción se permita que el tribunal nombre un perito en situaciones como la de autos, <u>no</u> es fundamento jurídico válido en Derecho para, sin más consideraciones, incorporarlo a nuestro acervo jurídico. La Mayoría aparenta aplicar el pasaje "Todo me es lícito..." pero se olvida del resto del texto que dispone "... mas no todo conviene". 1ra Corintios 10, 23.

Resulta verdaderamente desacertada la analogía utilizada por la Mayoría, al aplicar las disposiciones de la Regla 240 de Procedimiento Criminal al presente caso. 34 L.P.R.A. Ap. II R. 240. Los asuntos regulados por la Regla 240 le competen única y exclusivamente al foro judicial. Esto es, si un acusado está, o no, capacitado para ser sometido a un proceso criminal es una determinación que recae únicamente sobre los "hombros" del tribunal. El foro judicial tiene la responsabilidad de determinar, a base del testimonio de los peritos escogidos por el propio tribunal, si el acusado comprende la naturaleza del proceso que se sigue en su contra y si está capacitado para ayudar a su abogado en su defensa; <u>ello en el descargo de su responsabilidad</u> de velar por que el acusado tenga un proceso justo e imparcial. <u>Por el contrario</u>, la Regla 74 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, contempla <u>otro asunto cristalinamente opuesto</u>: la inimputabilidad del acusado al momento de la ocurrencia de los hechos. ¿A quién le corresponde determinar la existencia o ausencia de inimputabilidad? Dicha provincia está reservada únicamente para el juzgador de los hechos, ya sea un jurado o un tribunal de derecho, exclusivamente a base de la prueba que presenten las partes.

En nuestro sistema adversativo de justicia, tanto el representante legal del acusado como el representante del ministerio fiscal, <u>son correctamente percibidos por los miembros de un jurado como partes contrarias, que abogan por y defienden, sus respectivas posiciones</u>. El jurado, por el contrario, <u>percibe al juez que preside el proceso como un ente imparcial y objetivo que merece absoluta confianza; apreciación que necesariamente beneficiaría al perito que seleccione el tribunal</u>.

Ello, <u>en la práctica</u>, tendrá la <u>nociva y grave consecuencia</u> de que la opinión del perito psiquiatra que escoja el tribunal será, con toda probabilidad, la que el jurado acepte como buena; ello, independientemente del hecho de que esa opinión sea o no correcta y que la misma provenga o no

de un psiquiatra verdaderamente competente. Dicha situación ni promueve la búsqueda de la verdad, ni el que se haga cumplida justicia, ni que se sigan los principios de "juego limpio". De hecho, el perito del tribunal será una especie de voto decisivo, o "swing vote", toda vez que en esta clase de situaciones de ordinario se manifiesta el fenómeno de que dos facultativos médicos, con experiencia y educación similar, llegan a conclusiones diametralmente opuestas. Esto es, dado que, de ordinario, el perito del acusado entiende que el acusado es inimputable y el del Ministerio Público lo encuentra lúcido, con toda probabilidad el "perito neutro" del tribunal será la ficha que "rompa el tranque".

Dicho de otra forma, la norma hoy implantada por la Mayoría afectará el delicado equilibrio de nuestro sistema adversativo de justicia. Con certitud, el perito designado por el tribunal inclinará la balanza a favor de una de las partes pues su testimonio será percibido por el jurado como el que tiene el aval del tribunal. Lo anterior trastoca tanto la función de la defensa como la del Ministerio Público en nuestro sistema de justicia, pues una vez el perito del tribunal determine la existencia o ausencia de inimputabilidad, la suerte estará echada.

Por último, debemos señalar que, curiosamente, lo erróneo y desacertado de la norma hoy establecida por la Mayoría se acentúa más en aquellos casos que se llevan a cabo por tribunal de derecho. ¿Qué perito escogerá el juez? La respuesta es una perogrullada: aquél que el referido juez entienda más apto para fungir como tal. Cabe preguntarse: luego de que el juez escoja al perito que considera más capacitado, ¿descartará su opinión? En teoría, podemos asumir que lo podrá hacer. En la práctica, sabemos que no lo hará.

En consecuencia, y por las razones antes expresadas, somos del criterio que la solución propuesta por el Tribunal, alegadamente con el propósito de "salvaguardar los derechos" del acusado, resulta tener el efecto contrario; esto es, lo que hace es perjudicar los derechos del acusado sometiéndole a un proceso en el cual su culpabilidad o inocencia dependerá, con toda probabilidad, del criterio de un perito psiquiatra. Esa no es la mejor forma de impartir justicia.

Es por ello que disentimos.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado