EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Juan G. Cotto García<br><br>Peticionario | Certiorari<br><br>2020 TSPR 110<br><br>205 DPR \_\_\_\_\_ |
| --- | --- |

Número del Caso:  CC-2019-731

Fecha:  18 de septiembre de 2020

Tribunal de Apelaciones:

Panel XI

Abogado de la parte peticionaria:

Lcdo. José A. Morales Arroyo

Oficina del Procurador General:

Lcdo. Isaías Sánchez Báez
Procurador General

Lcdo. Pedro A. Vazquez Montijo
Subprocurador General

Lcda. Laura W. Robles Vega
Procuradora General Auxiliar

Materia:  Derecho Procesal Penal – La falta de prueba documental que evidencie un historial de insanidad mental, previo al hecho imputado, no provoca que se descarte la posibilidad de levantar la defensa de insanidad mental, al amparo de la Regla 74 de Procedimiento Criminal.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                CC-2019-731    Certiorari

Juan G. Cotto García

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 18 de septiembre de 2020.

Este caso nos presenta la oportunidad de resolver si el hecho de que un acusado no cuente con prueba documental que evidencie un historial de insanidad mental, previo al hecho que se le imputa, provoca que se descarte la posibilidad de levantar la defensa de insanidad mental, al amparo de la Regla 74 de Procedimiento Criminal, *infra*.

Por los fundamentos que expondremos más adelante, respondemos dicha interrogante en la negativa.

I

Por hechos ocurridos el 5 de julio de 2018 y el 3 de agosto del mismo año, el Ministerio Público presentó dos acusaciones en contra del Sr. Juan G. Cotto García (peticionario). Una acusación fue por el delito de actos lascivos y la otra por el mismo delito, en su modalidad de que la víctima es menor de 16 años.

Por su parte, el peticionario presentó una *Moción anunciando defensa de insanidad mental.* Mediante esta moción, expuso que tiene historial de enfermedad mental y que sufre de impulsos que le impiden controlar su conducta conforme a la ley. Para sustentar lo anterior, indicó que contrató los servicios del Dr. Fernando Medina Martínez (Psicólogo forense) para que fungiera como perito en el caso de epígrafe. Así, incluyó un Informe de la *Evaluación Psicológica* realizada por el doctor Medina Martínez y su *Curriculum vitae.*[1]

En resumen, en su Informe el doctor Medina Martínez concluyó que el peticionario:

> Tiene una inteligencia no verbal, a un nivel bajo el Promedio, con relación a adultos de su edad cronológica de cultura norteamericana. Esta puntuación bruta de 25 es equivalente a una edad mental de niños de 9 años. Es decir, su capacidad intelectual no verbal está por

---

[1] Como parte de la *Evaluación Psicológica*, el doctor Medina Martínez le realizó al peticionario la *Prueba de inteligencia No Verbal-4* (TONI-4), el *Inventario Multifásico de la Personalidad de Minnesota-2 Forma Reestructurada* (M.M.P.L-2, RF), el cuestionario para determinar algún tipo de déficit de atención (ADD, inatento; ADHD-hiperactivo o combinado) y unas entrevistas clínicas estructuradas.

Entre las observaciones clínicas, el Dr. Fernando Medina Martínez explica que la apreciación de los actos del peticionario "es similar a la que haría un niño". Véase, *Evaluación Psicológica,* Apéndice de la Petición de *certiorari*, pág. 22.

debajo al 83% de las personas de su edad cronológica de cultura norteamericana.[2] Por lo tanto, es importante tener en cuenta que su capacidad intelectual no verbal es limitada y esto hace que interprete el mundo que le rodea y sus acciones diferente a como lo haría una persona con inteligencia no verbal promedio o sobre el promedio.[3]

Además, el doctor Medina Martínez indicó que el peticionario padece del Trastorno del déficit de atención del tipo predominante combinado, inatento e hiperactivo (ADHD) y del Trastorno Froteurístico, caracterizado como "una excitación sexual intensa y recurrente de los tocamientos o fricción con una persona sin su consentimiento, que se manifiesta por fantasías, deseos o conducta irrefrenable".[4]

Así, el doctor Medina Martínez explicó que al combinar los mencionados hallazgos "podemos entender que el [peticionario] ha incurrido en 3 ocasiones en un acto inapropiado, con severas consecuencias, producto de un impulso incontrolable y mediado por una capacidad intelectual no verbal bajo el promedio".[5]

Por otro lado, el doctor Medina Martínez indicó que el peticionario recibe servicios psicológicos con el Dr. José Santiago Rivera, pero no recibe farmacoterapia. A

---

[2] El peticionario tiene 37 años.

[3] *Evaluación Psicológica*, Apéndice de la Petición de *certiorari*, pág. 25.

[4] Íd., págs. 25-26.

[5] *Evaluación Psicológica,* Apéndice de la Petición de *certiorari*, pág. 26.

tenor con todo lo anterior, el doctor Medina Martínez recomendó lo siguiente:

> (1) Que se tenga en cuenta los resultados de la presente evaluación, antes de tomar ninguna determinación final en este caso.
>
> (2) Que se considere como primera opción, que el [peticionario] sea sometido a un tratamiento psicológico de modificación de conducta y consejería psicológica, junto a tratamiento psiquiátrico farmacológico ambulatorio, encaminado a lidiar con su condición de ADHD y "Trastorno Froteurístico" mientras continúa trabajando.[6]

Durante una vista de estado de los procedimientos, el Ministerio Público le requirió al peticionario que le proveyera un listado de los hospitales y/o doctores que le han atendido. Por su parte, el peticionario argumentó que del Informe rendido por el doctor Medina Martínez surgía que éste recibe tratamiento psicológico con el doctor Santiago Rivera y que próximamente podían suplir al Ministerio Público lo que solicita. Ante ello, el foro de instancia le ordenó al peticionario que le proveyera al Ministerio Público la información requerida y, además, señaló otra vista de estado de los procedimientos.[7]

Así las cosas, el peticionario presentó una *Moción sometiendo información de tratamientos médicos*.[8] En específico, incluyó en la moción una *Certificación de Tratamiento* (certificación) provista por la Administración de Servicios de Salud Mental y Contra la

---

[6] Íd.

[7] *Minuta*, Apéndice del Alegato del Procurador General, págs. 5-6.

[8] *Moción sometiendo información de tratamientos médicos,* Apéndice de la Petición de *certiorari*, págs. 44-48.

Adicción (ASSMCA), la cual acreditó que el peticionario fue admitido en ASSMCA el 7 de enero de 1994 (cuando tenía 11 años) y que recibió servicios allí. Sin embargo, surge de la certificación una advertencia en la cual se indica que la información antes mencionada se transcribe del tarjetero de pacientes inactivos y que es la única información disponible del peticionario. Además de la certificación, el peticionario añadió a la moción un récord médico que contiene la *Entrevista inicial y de Cernimiento* realizada por el doctor Rivera Santiago (Psicólogo), con fecha del 29 de agosto de 2018.[9] Mediante ésta, el doctor Rivera Santiago indicó que el diagnóstico provisional del peticionario es el siguiente: Eje I: 302.81 *Fetishistic Disorder*, F 5.0 y Eje II: F 60.9.

En la vista sobre el estado de los procedimientos el Ministerio Público alegó que los documentos provistos por el peticionario no cumplían con los requisitos que establece la regla para establecer la defensa de insanidad mental. En específico, el Ministerio Público expresó lo siguiente:

> La información que la defensa acompañó en su Moción es simplemente un cuestionario de una entrevista hecha por el Dr. José A. Rivera que data del 29 de agosto de 2018. Los hechos de este caso fueron sometidos el 15 de agosto de 2018 y varios días después es que el acusado acude a una cita con un especialista. El otro documento que se acompaña, que es el que se hizo mención de ASSMCA, es cuando el acusado tenía 11 años y lo que surge de ese documento es que él recibió algún tipo de servicio cuando tenía esa

---

[9] *Entrevista Inicial y de Cernimiento,* Apéndice de la Petición de *certiorari*, págs. 46-48.

edad. **Las reglas establecen que al momento de los hechos el imputado tenía que estar bajo tratamiento con un Psicólogo o Psiquiatra y no después de los hechos.**[10] (Énfasis nuestro).

**Así, el tribunal de instancia le indicó en corte abierta al peticionario que "si no provee la información porque no existe, no procede su solicitud".**[11] Por consiguiente, el foro de instancia le concedió al peticionario 10 días para que consiguiera la información que solicitó en ASSMCA y que, consecuentemente, se la proveyera al Ministerio Público. Además, le indicó al Ministerio Público que "de entenderlo pertinente, deberá informar el nombre y dirección de los peritos que utilizará".[12] En respuesta, el peticionario le informó al foro primario que le iba a presentar un proyecto de orden dirigida a ASSMCA. Así las cosas, el foro de instancia señaló una vista sobre el estado de los procedimientos para el 24 de junio de 2019 e indicó que sería la vista final sobre este asunto.

Posteriormente, el tribunal de instancia proveyó de conformidad a la solicitud del peticionario y emitió la Orden a nombre de ASSMCA. Mediante ésta, el foro de instancia le ordenó a ASSMCA proveer copia del expediente y/o récord médico y las evaluaciones psiquiátricas y/o psicológicas del peticionario. Además, el tribunal de instancia le advirtió a ASSMCA que -de no poder localizar

---

[10] *Minuta*, Apéndice del Alegato del Procurador General, pág. 8.

[11] Íd.

[12] Íd.

dicho expediente- proveyera la siguiente información: (1) diagnóstico por el cual recibió tratamiento; (2) medicación recetada; (3) duración de su tratamiento y (4) nombre de los médicos que brindaron el tratamiento.[13]

En cumplimiento con la Orden, el peticionario presentó una *Moción sometiendo información de tratamientos médicos* e incluyó una *Certificación de Tratamiento* emitida por ASSMCA. Mediante ésta, ASSMCA reiteró que -en efecto- el peticionario había sido admitido al Centro de Salud Mental de la Comunidad de Bayamón cuando tenía 11 años y que había recibido tratamiento clínico allí, pero que el expediente no estaba disponible.[14]

De conformidad con lo anterior, en la vista sobre el estado de los procedimientos el peticionario informó al tribunal que trató de conseguir copia del récord médico a través de la Orden dirigida a ASSMCA, pero que la gestión resultó infructuosa.

Por su parte, el Ministerio Público le solicitó al foro de instancia que no le permitiera al peticionario presentar la defensa de insanidad mental, tras alegar que éste no había cumplido con las exigencias de las Reglas de Procedimiento Criminal.

En respuesta, el peticionario argumentó que la Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II, solo

---

[13] *Orden*, Apéndice de la Petición de *certiorari*, pág. 53.

[14] *Certificación de Tratamiento*, Apéndice de la Petición de *certiorari*, pág. 55.

exigía que se presente un informe y no un récord médico.[15] Argumentó que ASSMCA (el Estado) es el custodio de dicho expediente y que el mismo no estaba disponible. En consecuencia, indicó que no puede proveer una información que el Estado ni él tienen. Añadió que la *Certificación de Tratamiento* emitida por ASSMCA confirma que recibió tratamiento médico. Ante ello, el Ministerio Público expresó que el procedimiento no estaba bajo la Regla 240 de Procedimiento Criminal, sobre procesabilidad*,* sino bajo la Regla 74 de Procedimiento Criminal, 34 LPRA Ap. II, sobre insanidad mental y que ésta última requiere indagar sobre los médicos y el tratamiento que recibió "toda vez que es el acusado el que tiene que poner en posición al Ministerio Público y en su día al tribunal de que este defecto o esta condición mental le impedía entender sus actos al momento de los hechos".[16] Así, el Ministerio Público argumentó que no se habían cumplido con las exigencias de las reglas.

**Evaluados los argumentos de ambas partes, el tribunal de instancia expresó que el peticionario no cumplió con proveer la información requerida por la Regla 74. En particular, el tribunal de instancia señaló que "la Regla 74 de Procedimiento Criminal es clara en cuanto a**

---

[15] La Regla 240 de Procedimiento Criminal, 34 LPRA Ap.II, proscribe sobre el concepto de procesabilidad. A diferencia de la inimputabilidad por insanidad mental que evalúa la capacidad mental al momento de los hechos, la procesabilidad atiende el estado mental de la persona al momento de encarar el proceso judicial. Pueblo v. Santiago Torres, 154 DPR 291, 300 (2001).

[16] *Minuta Resolución*, Apéndice de la Petición de *certiorari*, pág. 14.

**que si en ambos casos, si el acusado o el Ministerio Público no suplen la información requerida; no tendrán derecho a ofrecer tal evidencia".** [17] En consecuencia, el foro de instancia declaró "no ha lugar" a la *Moción anunciando defensa de insanidad mental*.

Inconforme, el peticionario acudió ante el Tribunal de Apelaciones mediante un recurso de *certiorari* y señaló que el tribunal de instancia erró al negarse a permitir la defensa de insanidad mental en las circunstancias particulares del caso de epígrafe. El peticionario arguyó que es a él a quien más le interesaba obtener el récord médico de ASSMCA, pero que el Estado -a quien le corresponde custodiar el récord médico- no lo tiene y que, en consecuencia, no puede proveer algo que existió, pero no está disponible. En particular, argumentó que cumplió con lo esbozado en la Regla 74 y que suministró al Ministerio Público la prueba con que cuenta para establecer su defensa. Explicó que la prueba para sostener su defensa obra en el Informe pericial emitido por el doctor Medina Martínez y que, además, del propio Informe surge que el peticionario recibió servicios psicológicos y psiquiátricos en ASSMCA por previamente habérsele diagnosticado ADHD.

No obstante, el Tribunal de Apelaciones denegó la expedición del recurso, tras razonar lo siguiente:

> Examinada la documentación provista por [peticionario] no cabe hablar de que el TPI haya

---

[17] *Íd.*, pág. 16.

abusado de su discreción o errado de forma alguna que se haga indispensable nuestra intervención. **Incluso, si se diera por cierto que no es culpa del [peticionario] que la información no esté disponible, el hecho cierto es que no la está.** Al Tribunal no puede requerírsele que, por fe, acepte una defensa desprovista de base evidenciaria que requiere la Regla 74 de Procedimiento Criminal, *supra*. […].[18] (Énfasis nuestro).

Así, el foro apelativo intermedio concluyó que "[l]a documentación presentada por el peticionario no cumple a carta cabal con los requisitos impuestos[…].[19]

Inconforme con esta determinación, el peticionario presentó una *Moción urgente de reconsideración* e insistió en que en el récord del tribunal de instancia obran los documentos necesarios para que éste tenga la oportunidad de que se evalué su defensa de insanidad mental. Aludió a que el Ministerio Público cuenta con el Informe del doctor Medina Martínez en el cual se concluye que el peticionario tiene historial de enfermedad mental y que sufre de impulsos que le impiden controlar su conducta y comportarse conforme a la ley. Así, arguyó que siendo el Informe del doctor Medina Martínez el documento presentado para sostener la defensa y estando el mismo en poder del Ministerio Público, éste puede rebatirlo con prueba pericial de entenderlo necesario. Reiteró que esa es la base evidenciaria que requiere la Regla 74. No obstante a lo anterior, el foro apelativo intermedio

---

[18] *Resolución del Tribunal de Apelaciones*, Apéndice de la Petición de *certiorari*, pág. 60.

[19] Íd., pág. 61.

declaró "no ha lugar" a la *Moción urgente de reconsideración.*

En desacuerdo, el peticionario presentó una Petición de *certiorari* ante este Tribunal y señala que "[e]rró el Tribunal de Primera Instancia al negarse a permitir la defensa de insanidad mental en las circunstancias del caso de epígrafe".[20] En particular, el peticionario añadió lo siguiente:

> Sostener la posición del TPI y el TA nos llevaría al absurdo de concluir que un acusado quien nunca haya recibido tratamiento médico […] no puede presentar esa defensa por la ausencia de récords médicos anteriores. En este caso es peor porque aquí existieron unos récords médicos, pero estos no están disponibles por causas no atribuibles al acusado.[21]

Luego de expedir el auto de *certiorari* solicitado el 25 de octubre de 2019 y comparecido las partes a expresar su posición, pasemos, pues, a exponer el marco jurídico para disponer de la controversia presentada en el caso de epígrafe.

II

A.   La defensa de insanidad mental

El Art. 21 del Código Penal, 33 LPRA sec. 5034, relativo a las formas de culpabilidad y el requisito general del elemento subjetivo, dispone lo siguiente:

> (a) Una persona solamente puede ser sancionada penalmente si actuó a propósito, con conocimiento, temerariamente o negligentemente con relación a un resultado o circunstancia prohibida por ley.

---

[20] Petición de *certiorari*, pág. 3.

[21] Petición de *certiorari*, pág. 7.

> (b) El elemento subjetivo del delito se manifiesta por las circunstancias relacionadas con el hecho, **la capacidad mental**, las manifestaciones y conducta de la persona. (Énfasis nuestro).

Al respecto, la Profesora Dora Nevares Muñiz nos comenta que el Art. 21 (a) del Código Penal, *supra*, sobre el principio de culpabilidad y corolario del principio de legalidad, "reitera lo expresado en el Art.8 (Principio de responsabilidad penal), primer párrafo, de que "[n]adie podrá ser sancionado por un hecho previsto en una ley penal si no lo ha realizado según las formas de culpabilidad previstas en este Código."[22]

Por su parte, el Art. 21 (b) del Código Penal, *supra*, "constituye una disposición probatoria para orientar al juzgador en la determinación del elemento subjetivo". Entiéndase que "son pertinentes: las circunstancias relacionadas con el hecho, **la capacidad mental**, las manifestaciones y conducta de la persona".[23] De no ser suficiente la capacidad mental del actor para que se configure la forma de culpabilidad o elemento mental requerido por el delito "se consideraría como un caso de inimputabilidad [...]".[24]

A tenor con lo anterior, el Art.38 del Código Penal, 33 LPRA sec. 5061, establece la **incapacidad mental** como

---

[22] D. Nevares Muñiz, Derecho Penal Puertorriqueño, 7ma ed., San Juan, Ed. Instituto para el Desarrollo del Derecho, Inc., 2015, pág. 192.

[23] Nevares Muñiz, op. cit., pág. 192.

[24] Íd., pág. 194.

causa de **inimputabilidad**. En específico, el Art. 38 del

Código Penal, *supra*, estatuye lo siguiente:

> Nadie será sancionado por un hecho que constituya delito si al momento de su comisión no es imputable. Se consideran causas de inimputabilidad las siguientes:
>
> (a) Minoridad.
> **(b) Incapacidad Mental.**
> (c) Trastorno Mental Transitorio. (Énfasis nuestro).

En cuanto a la incapacidad mental como causa de

inimputabilidad, el Art. 40 del Código Penal, 33 LPRA sec.

5063, preceptúa que:

> **No es imputable quien al momento del hecho, a causa de enfermedad o defecto mental, carece de capacidad suficiente para comprender la criminalidad del acto o para conducirse de acuerdo con el mandato de ley.**
>
> Los términos enfermedad o defecto mental no incluyen una anormalidad manifiesta sólo por reiterada conducta criminal o antisocial.[25]
>
> Para efectos de la prueba de incapacidad mental, el imputado deberá evidenciar la alegada incapacidad. (Énfasis nuestro).

Nótese que el Art. 40 del Código Penal, *supra*, está

enmarcado bajo la *fórmula siquiátrica-sicológica-jurídica.*

Esta fórmula "se refiere a la insuficiencia en las

facultades mentales o perturbación en las mismas, que le

impide a la persona comprender la criminalidad del acto o

dirigir voluntariamente sus acciones".[26] Esto es, contiene

dos aspectos: el cognoscitivo y el volitivo. El aspecto

---

[25] Esta sección se incorporó como parte del Art. 40 del Código Penal, *supra*, con el propósito de excluir a los sicópatas de la defensa de inimputabilidad. Ello, toda vez que aunque poseen una anormalidad en su personalidad afectiva y volitiva, no se consideran inimputables. Nevares Muñiz, op. cit., pág. 292.

[26] Nevares Muñiz, op. cit., pág. 284.

cognoscitivo tiene que ver con la incapacidad de la persona para reconocer el carácter ilícito de su acción u omisión y comprender la criminalidad de su acto. Por su parte, el aspecto volitivo se refiere a la incapacidad de la persona para conducirse conforme al mandato de la ley.[27]

Al respecto, el Profesor Luis E. Chiesa Aponte nos comenta lo siguiente:

> Cuando se expresa que el acusado es "inimputable" por **incapacidad mental**, lo que quiere decirse es que no tiene sentido (ni resultaría justo) imputarle el acto antijurídico como un hecho suyo, pues al momento de cometer el delito, el sujeto no tenía capacidad para controlar sus acciones o para entender la criminalidad de su proceder.[28] (Énfasis nuestro).

En fin, es importante señalar que desde Pueblo v. Marcano Pérez, 116 DPR 917, 926-927 (1986), el criterio de inimputabilidad no exige una carencia total de capacidad mental, sino que basta con que dicha carencia sea de índole suficiente o sustancial.

B. El Procedimiento Criminal ante la defensa de insanidad mental

Es sabido que "a los fines de levantar y luego establecer la defensa de incapacidad mental, cónsono con la Regla 74 el acusado tiene que presentar un aviso ante el tribunal y notificarlo al Ministerio Público".[29] Esto, debido a que la Regla 74 "responde al imperativo de poner

---

[27] Íd.

[28] L. E. Chiesa Aponte, Derecho Penal Sustantivo, 2da ed., San Juan, Publicaciones JTS, 2013, pág. 256.

[29] Pueblo v. Santiago Torres, 154 DPR 291, 300 (2001).

al Ministerio Público en condiciones de confrontarse con una defensa de coartada o locura".[30]

En específico, la Regla 74 sobre alegación de no culpable; **notificación defensa de incapacidad mental** o coartada, dispone lo siguiente:

> Cuando el acusado hiciere alegación de no culpable e intentare establecer la defensa de trastorno mental transitorio o de incapacidad mental en el momento de la alegada comisión del delito imputándole, o cuando su defensa fuera la de coartada, deberá presentar en el Tribunal de Primera Instancia un aviso al efecto, con notificación al fiscal, dentro de los veinte (20) días siguientes al acto de la lectura de la acusación en los casos en que deba celebrarse dicho acto. Cuando se hubiere entregado personalmente al acusado una copia de la acusación, el término para la presentación de estas mociones será de no más de veinte (20) días desde que el acusado hubiese respondido. Cuando no hubiese contestado, el término será de no más de veinte (20) días después de que se registre la alegación de no culpable. En casos por delitos menos graves a los cuales no aplique el derecho a juicio por jurado el aviso con notificación al fiscal se presentará por lo menos veinte (20) días antes del juicio.
>
> El acusado que desee establecer la defensa de incapacidad mental o de trastorno mental transitorio deberá suministrar al Ministerio Público, al momento de plantearla, la siguiente información:
> (a) Los testigos con los que se **propone establecer la defensa** de incapacidad mental o trastorno mental transitorio.
> (b) La dirección de dichos testigos.
> (c) Los documentos **a ser utilizados para sostener la defensa**, supliendo copia de los mismos, y de no poseerlos, informar en poder de quién se encuentran tales documentos, autorizando a que los mismos sean fotocopiados.
> (d) Hospital u hospitales en que estuvo recibiendo tratamiento y las fechas en que lo recibió.

---

[30] _Pueblo v. Pérez Velázquez_, 147 DPR 777, 783 (1999); _Pueblo v. Tribunal Superior_, 101 DPR 133, 136 (1973).

(e) Médicos o facultativos que hubiesen tratado o atendido al imputado en relación a su incapacidad mental o condición de trastorno mental transitorio.
[. . . . . . .]
El Ministerio Público tendrá la obligación recíproca de informar al acusado el nombre y dirección de los testigos o los documentos que se propone utilizar para refutar la defensa de coartada, trastorno mental transitorio o incapacidad mental.

En ambos casos, si el acusado o el Ministerio Público no cumplen con dicho aviso o no suplen la información requerida, no tendrán derecho a ofrecer tal evidencia. El tribunal podrá, sin embargo, permitir que se ofrezca dicha evidencia cuando se demostrare la existencia de causa justificada para haber omitido la presentación del aviso o información. En tales casos el tribunal podrá decretar la posposición del juicio o proveer cualquier otro remedio apropiado. (Énfasis nuestro).

Vemos que, en cuanto a la incapacidad mental, la Regla 74 atiende varios asuntos, a saber: la notificación, el descubrimiento de prueba, la obligación recíproca del Ministerio Público y las consecuencias de incumplir con lo allí estatuido.

En cuanto a la notificación de la defensa de insanidad mental, la Regla 74 requiere que el acusado emita un aviso al tribunal y al Ministerio Público para informarles que desea presentar la defensa en el juicio. Esto es, se requiere "una notificación anticipada de las defensas de locura y coartada, consagrando así estatutariamente al ministerio fiscal un medio de descubrimiento de prueba anterior a la celebración del juicio."[31] Por consiguiente, "es razonable que la defensa

---

[31] Pueblo v. Tribunal Superior, 92 DPR 116, 118-119 (1965).

adelante que se propone invocar la defensa de insanidad mental, de forma que el fiscal sepa que no podrá meramente descansar en la presunción de cordura."[32]

En particular, con respecto a cuándo se debe presentar la notificación, adviértase que los términos establecidos en la Regla 74 pueden variarse cuando medie justa causa.[33] Nótese que, "[e]l verdadero alcance de la excepción es permitir al acusado la notificación tardía de la defensa".[34] Además, en Hernández Ortega v. Tribunal Superior, 102 DPR 765 (1974), establecimos que la defensa de insanidad mental también puede presentarse en el acto de la vista preliminar.[35]

En torno al descubrimiento de prueba, la Regla 74 especifica los documentos que debe incluir la notificación. Sépase que en sus orígenes la regla nada disponía sobre ello. Sin embargo, en Pueblo v. Tribunal Superior, 92 DPR 116 (1965), tuvimos la oportunidad de delimitar el alcance del descubrimiento autorizado por la Regla 74.[36]

En el precitado caso, el acusado presentó un escrito titulado *Alegación y notificación bajo la Regla 74* mediante el cual hizo alegación de no culpable por razón

---

[32] E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Colombia,Ed. Forum, 1993, Vol. III, pág. 302.

[33] Nevares Muñiz, op. cit., pág. 295; Chiesa Aponte, op. cit., pág. 302.

[34] Chiesa Aponte, op. cit., pág. 303.

[35] Así fue reiterado en Pueblo v. Lebrón Lebrón, 116 DPR 855 (1986).

[36] En ese entonces, la R. 74 de Procedimiento Criminal, *supra*, no especificaba la información requerida al momento de presentar la defensa de insanidad mental.

de insanidad mental y solicitó juicio por jurado. Por su parte, el Ministerio Público presentó una *Moción* y alegó que el acusado no solo venía obligado a emitir un aviso informando que pretendía presentar la defensa de insanidad mental, sino que también debía producir la prueba con la que se proponía sustentar su defensa. Ello, pues el acusado debía poner en posición al Ministerio Público para conocer con qué prueba pretendía establecer la defensa de insanidad mental. Así, el Ministerio Público le solicitó al acusado la siguiente información: los testigos peritos con los que se proponía establecer su defensa, sus direcciones, su historial clínico, y los hospitales y las fechas en que estuvo bajo tratamiento y recluido. Sin embargo, el foro de instancia proveyó "no ha lugar" a la solicitud del Ministerio Público.

Trabada la controversia, el Ministerio Público acudió ante este Foro. En resumen, el acusado sostuvo que proveer la información solicitada violentaría su derecho a la no autoincriminación, el privilegio de las comunicaciones entre médico y paciente, y el Art. 11 del Código de Enjuiciamiento Criminal, 34 LPRA sec. 11, que prohíbe al fiscal interrogar los testigos del acusado excepto en el juicio. Por su parte, el Ministerio Público reiteró sus argumentos.

Evaluada la controversia, allí expusimos -en resumen- lo siguiente:

> [L]a información requerida, por referirse a una defensa afirmativa del encausado, es de naturaleza esencialmente exculpatoria. **Además,**

**se trata de la evidencia que éste intenta utilizar en el acto del juicio.** En cuanto a las defensas específicas a que se refiere la Regla 74 es de notarse que cualquier información que se suministre no tiende a establecer el caso de El Pueblo; de ahí que no pueda utilizarse como índices de prueba por el ministerio público.[37](Énfasis nuestro).

Por consiguiente, en aquella ocasión devolvimos el caso al foro de instancia para que se ordenara al acusado a suministrar al Ministerio Público la siguiente información: "(a) el nombre y dirección de los testigos, incluyendo los peritos que se dispone a utilizar para establecer la defensa de locura, excluyendo su propio testimonio y, (b) la prueba documental que se dispone a utilizar para sustanciar tal defensa".[38]

De esta forma, "[r]econocimos así la necesidad de atenuar las dificultades inherentes del sistema adversativo suprimiendo la posibilidad de sorpresa y ocultación que lesionan el proceso de hacer justicia".[39] Esto, debido a que antes la defensa de insanidad mental se presentaba en el juicio, lo que provocaba que el Ministerio Público no tuviera tiempo para investigar ni prepararse para refutarla.[40] Por consiguiente, el propósito de la Regla 74 es poner al Ministerio Público en condiciones de confrontarse con la defensa de locura.[41]

---

[37] Pueblo v. Tribunal Superior, supra, pág. 123.

[38] Íd., págs. 128-129.

[39] Pueblo v. Tribunal Superior, 101 DPR 133, 135-136 (1973).

[40] Íd., pág. 137. Véase, además, Pueblo v. Pérez Velázquez, 147 DPR 777, 782-783 (1999).

[41] Pueblo v. Tribunal Superior, supra, pág. 136. Con posterioridad a esta normativa, la R. 74 sufrió una enmienda para añadir la

Del mismo modo, el Código Penal de California -del cual proviene nuestra Regla 74- requiere la notificación de la defensa de locura al Ministerio Público antes de comenzar el juicio. Esto, pues, parte de la premisa de que el Ministerio Público "tiene la necesidad de prepararse ante la prueba pericial, inherentemente compleja, que puede presentar el acusado con sus peritos".[42]

Otro aspecto importante del descubrimiento de prueba es que la evidencia con la que se pretenda establecer la insanidad mental no tiene que surgir estrictamente de la que presente el acusado, sino que puede surgir de la propia prueba de cargo del Ministerio Público.[43] También, tanto la defensa como el Ministerio Público pueden hacer uso de testigos legos para ayudar al juzgador a determinar la condición mental del acusado.[44] En cuanto a la admisibilidad de este tipo de testimonios, "este Tribunal

---

información requerida al momento de presentar la defensa de insanidad mental. Ello, con el propósito de atemperar la R. 74 con la jurisprudencia interpretativa. No obstante, el propósito de la R. 74 se mantuvo, esto es: poner al Ministerio Público en condiciones de confrontar la prueba. Véase la Ley Núm. 30 de 29 de mayo de 1984.

[42] Pueblo v. Pérez Velázquez, supra, pág. 786. En la disposición del Código Penal de California, 50A Cal. Penal Code sec. 1016, el acusado tiene que notificar la defensa antes de comenzar el juicio, pero a diferencia de la Regla 74, "no dispone sobre información que tiene que notificar al Ministerio Fiscal". Al amparo de la precitada disposición, se juzga al acusado y si se encuentra culpable, entonces el mismo jurado o uno nuevo evalúa si éste se encontraba incapacitado mentalmente al momento de los hechos. Respecto a la evidencia, el tribunal selecciona 3 peritos y ordena que éstos investiguen sobre el estado mental. Íd., pág. 784.

[43] Pueblo v. Santiago Torres, 154 DPR 291, 300 (2001) citando a Pueblo v. Ríos Maldonado,132 DPR 146, 168 (1992).

[44] Pueblo v. Marcano Pérez, 116 DPR 917, 929 (1986).

ha sido muy liberal al permitir un variado tipo de declaraciones".[45]

A tenor con lo anterior, en el caso de Pueblo v. Colón Morales, 100 DPR 40 (1971), se planteó la defensa de insanidad mental. Sin embargo, luego de celebrados los procedimientos, estos resultaron en una convicción. En revisión, el apelante planteó como error que el Ministerio Público no cumplió su obligación de probar la sanidad mental del acusado fuera de toda duda razonable. El apelante nunca había estado recluido -antes de los hechos- en una institución para personas con problemas de salud mental.[46] La prueba que desfiló tanto por parte del apelante como la de refutación presentada por el Ministerio Público descansó en testimonios de legos. En particular, testigos que presenciaron el asesinato, compañeros de trabajo y vecinos. Luego de evaluar la prueba, este Foro determinó que el apelante había rebatido la presunción de sanidad mental y que el Ministerio Público no había probado su cordura más allá de duda razonable. Por consiguiente, en aquella ocasión, revocamos el dictamen condenatorio.

De otra parte y como mencionáramos, en Hernández Ortega v. Tribunal Superior, supra, extendimos la presentación de la defensa de insanidad mental al acto de la vista preliminar. Nótese que ello tiene como propósito

---

[45] E.L. Chiesa, Práctica Procesal Puertorriqueña, San Juan, Pubs. JTS, 1985, Evidencia, Vol. I, págs. 235-237.

[46] Pueblo v. Colón Morales, 100 DPR 40, 44 (1971).

darle la oportunidad al imputado, en una etapa temprana del proceso, de establecer que no debe ser sometido a juicio porque era inimputable al momento de los hechos. No obstante, cuando "la prueba de la incapacidad no sea tan clara, o […] haya testimonios periciales contradictorios, el juez no tiene que ni debe adjudicar los méritos de la defensa para que el asunto se dilucide más ampliamente en una vista en su fondo".[47] Resaltamos que el descubrimiento de prueba tiene limitaciones, pues de lo contrario se afectaría el derecho que tiene el acusado a no incriminarse.[48]

Por otro lado, la Regla 74 atiende el deber recíproco que tiene el Ministerio Público, específicamente, a la hora de proveerle al acusado la prueba de refutación. Esto es, el nombre y dirección de los testigos o los documentos que se propone utilizar. Así, el deber recíproco de notificar preserva el balance que garantiza las exigencias del debido procedimiento de ley y del juicio justo.[49]

---

[47] Pueblo v. Lebrón Lebrón, 121 DPR 154, 156 (1988). Resaltamos que cuando resolvimos el precitado caso, la Regla 74 de Procedimiento Criminal, *supra*, especificaba los documentos que debían suministrarse para plantear la defensa de insanidad mental.

[48] Pueblo v. Pérez Velázquez, 147 DPR 777, 783 (1999). Al respecto y de modo persuasivo, el Comité nos recomienda añadir a la regla 74 un párrafo que opera como una salvaguarda del derecho contra la autoincriminación del acusado. En particular, el párrafo lee como sigue:

> La información obtenida por el Ministerio Público como resultado del descubrimiento de prueba que permite esta Regla no se admitirá como prueba de cargo y solo lo será para propósitos de refutación o impugnación.

Véase, Secretariado de la Conferencia Judicial y Notarial, *Informe de Reglas de Procedimiento Criminal*, noviembre 2018, pág. 188.

[49] Pueblo v. Acosta Acosta, 107 DPR 68, 70 (1978).

Por último, la Regla 74 dispone sobre las consecuencias de incumplir con el aviso o la presentación de la información requerida. En lo pertinente, si el acusado no cumple con el aviso o no ofrece la información requerida, ello tendrá el efecto de que no podrán ofrecer tal evidencia. Ahora bien, nótese que la regla es laxa en el sentido de que le provee discreción al tribunal para que cuando haya mediado justa causa por la cual no se cumplió con el aviso o la información, éste permita la presentación de la prueba.[50] La flexibilidad de la Regla 74 es cónsona con el principio de que el objetivo principal de los procesos judiciales es la búsqueda y esclarecimiento de la verdad.[51]

A tenor con lo anterior, en el caso de Pueblo v. Encarnación Santos, 150 DPR 489 (2000), avalamos que ante la mera presentación de una *Moción sobre incapacidad mental del imputado* indicando que el abogado tenía serias dudas sobre la capacidad mental de su cliente al momento de los hechos y al momento de ser procesado, el foro de instancia ordenara que se le asignara un perito privado con cargo al Estado -por razón de indigencia- para que el acusado pudiese presentar su defensa de inimputabilidad por incapacidad mental.[52]

---

[50] Nevares Muñiz, op. cit., pág. 295.

[51] Pueblo v. Rodríguez González, 202 DPR 258, 260 (2019).

[52] En Ake v. Oklahoma, 470 US 68 (1985), el Tribunal Supremo de los Estados Unidos resolvió que -al amparo del debido proceso de ley- un acusado indigente tiene derecho a que se le asigne gratis un perito para que pueda presentar evidencia sobre la defensa de incapacidad mental.

Por otro lado, nótese que la absolución por razón de incapacidad mental no significa que la persona será puesta en libertad inmediatamente.[53] Es decir, "en los casos en que la persona es sometida a juicio y resulta no culpable por razón de incapacidad mental se procederá a determinar si se impone una medida de seguridad".[54] Estas medidas, toman en consideración si la persona constituye un riesgo para la sociedad y si ésta puede beneficiarse de un tratamiento médico.[55] Así, las medidas de seguridad tienen un propósito dual, esto es: beneficiar al sujeto y proteger a la sociedad.[56] Para ello, el tribunal retiene jurisdicción sobre la persona y podrá ordenar que se interne en una institución adecuada para su tratamiento.[57]

En fin, destacamos que una de las dificultades que siempre ha confrontado el Derecho Penal es la formulación de la defensa de inimputabilidad.[58] No obstante, "a través de la historia las cortes han adoptado diversos criterios para determinar la locura […]".[59] Asimismo, "la evolución de la psiquiatría moderna también ha afectado profundamente las determinaciones sobre la inimputabilidad

---

[53] Pueblo v. Colón Morales, supra, pág. 45.

[54] Nevares Muñiz, op. cit., págs. 298-29. Véase, además, A. Cruz Vélez y B. Seijo Ortiz, Manual de la litigación criminal, Hato Rey, Publicaciones Puertorriqueñas, Inc., 2006, pág. 218.

[55] R. 241 de Procedimiento Criminal, 34 LPRA Ap. II.

[56] Cruz Vélez y Seijo Ortiz, op.cit., pág. 213.

[57] Véase Art. 81 del Código Penal, 33 LPRA sec. 5121.

[58] Pueblo v. Marcano Pérez, supra, págs. 925-926.

[59] Íd.

de los incapacitados mentales y las medidas de seguridad post sentencia cuando prevalece esta defensa".[60]

III

Como mencionáramos, el peticionario señala que el foro de instancia erró al declarar "no ha lugar" a la *Moción anunciando defensa de insanidad mental*. Luego de un examen minucioso de la Regla 74 y la jurisprudencia interpretativa, es forzoso concluir que al peticionario le asiste la razón. Veamos.

**Surge del expediente que el peticionario cumplió con las exigencias de la Regla 74.** En cuanto a la notificación se refiere, nótese que el peticionario avisó mediante la presentación de la *Moción anunciando defensa de insanidad mental*, tanto al tribunal como al Ministerio Público, su intención de levantar la defensa.[61]

Con respecto a la prueba, el peticionario facilitó al tribunal y al Ministerio Público la información requerida por la Regla 74. Esto es: **inciso (a) Los testigos con los**

---

[60] Íd. Nótese que la tendencia en los Códigos Penales se dirige a "ampliar el eximente de responsabilidad penal por inimputabilidad a anomalías síquicas distintas a la enfermedad mental y a la retardación mental". Entre ellas, el trastorno mental transitorio. Véase Nevares Muñiz, op. cit., pág. 294.

[61] Al respecto, el Procurador General alega que la *Moción anunciando defensa de insanidad mental* fue presentada de forma tardía. No obstante, dicha alegación carece de méritos. Del expediente se desprende que, luego de que el peticionario fue acusado, su abogado renunció y posteriormente hubo un cambio de representación legal. Resaltamos que la propia R. 74 otorga discreción al juez para atender la moción pasados los 20 días luego de la acusación, siempre que exista justa causa para ello. Además, esta alegación nunca fue planteada en el foro de instancia ni en el apelativo.

En cuanto a que el término puede variarse cuando medie justa causa véase: Nevares Muñiz, op. cit., pág. 295. Asimismo, el Comité nos sugiere que evaluemos la posibilidad de incluir la expresión "salvo justa causa" cuando se trata del término para presentar la defensa.

Véase Secretariado de la Conferencia Judicial y Notarial, *Informe de Reglas de Procedimiento Criminal*, noviembre 2018, pág. 187.

**que se propone establecer la defensa de incapacidad mental.** En la *Moción anunciando defensa de insanidad mental*, el peticionario indicó que pretendía utilizar al doctor Medina Martínez como testigo pericial para establecer su defensa; **inciso (b) La dirección de dichos testigos.** El peticionario incluyó el *Curriculum vitae* del galeno, el cual además contiene sus datos personales, tales como su dirección, teléfonos, entre otros; **inciso (c) Los documentos a ser utilizados para sostener la defensa, supliendo copia de los mismos, y de no poseerlos, informar en poder de quién se encuentran tales documentos, autorizando a que los mismos sean fotocopiados.** Conforme a lo anterior, el peticionario incluyó el Informe de la *Evaluación Psicológica* realizada por el doctor Medina Martínez.

Posteriormente y ante la solicitud del Ministerio Público requiriendo evidencia sobre el tratamiento médico recibido, el peticionario realizó esfuerzos y presentó una *Moción sometiendo información de tratamientos médicos*, en la que incluyó la *Certificación de Tratamiento* originada por ASSMCA, mediante la cual acreditó que fue admitido a dicha institución el 7 de enero de 1994 (cuando era un menor de 11 años) y que allí recibió servicios. Además, el peticionario incluyó un récord médico que contiene la entrevista inicial y de cernimiento realizada por el doctor Rivera Santiago en el que se alude a su condición mental. Asimismo, el peticionario diligenció nuevamente el documento

solicitado y obtuvo otra *Certificación de Tratamiento emitida por* ASSMCA, en la que se informó que el peticionario había sido admitido al Centro de Salud Mental de la Comunidad de Bayamón cuando tenía 11 años y que había recibido tratamiento clínico allí, pero que el expediente no estaba disponible; **inciso (d) Hospital u hospitales en que estuvo recibiendo tratamiento y las fechas en que lo recibió**. Para acreditar lo anterior, el peticionario incluyó las certificaciones de tratamiento originadas por ASSMCA, las cuales -como mencionáramos- especifican dónde recibió el tratamiento y en qué fecha.

Finalmente, en cuanto al **inciso (e) Médicos o facultativos que hubiesen tratado o atendido al imputado en relación a su incapacidad mental o condición de trastorno mental transitorio**, el peticionario acreditó que ha sido atendido por el doctor Medina Martínez y el doctor Santiago Rivera.

**Conforme a lo antes esbozado, queda claro que la prueba presentada por el peticionario satisface las exigencias de la Regla 74.** El peticionario puso en posición al Ministerio Público al proveerle la información esencial con la que pretende tratar de probar su defensa de inimputabilidad por insanidad mental. Entiéndase, que el peticionario cumplió con el principio fundamental de la Regla 74. Es decir, salvaguardó el derecho que le asiste al Ministerio Público de prepararse y confrontar la prueba que el peticionario pretende

utilizar y que -en efecto- está disponible. No existe el elemento sorpresa que pretende evitar dicha regla.

El que se desconozca el nombre del médico que atendió al peticionario en ASSMCA no le impide levantar la defensa, pues -como mencionáramos- esta defensa también puede probarse mediante prueba pericial producida posterior a los hechos, el testimonio de testigos legos, personas que presenciaron los hechos, entre otros. Por consiguiente, "no necesariamente es indispensable la existencia de un récord siquiátrico previo a los hechos, para que la defensa prospere, aunque ello fortalecería aún más el caso".[62]

Resolver lo contrario tendría el efecto de restringir el derecho a levantar la defensa de insanidad mental solamente a personas que han tenido el beneficio de recibir los cuidados de hospitalización y tratamiento médico para velar por su salud mental, previo al acto que el Estado le imputa. Evidentemente, tal resultado carecería de toda lógica y apego a la realidad.

Finalmente, advertimos que lo resuelto en esta Opinión nada tiene que ver con el valor probatorio de la prueba que -mediante el mecanismo de la Regla 74- el acusado pretenda presentar en su favor. En otras palabras, una cosa es el grado de distención que permite la regla en pro de que el acusado cuente con esta defensa -

---

[62] J. B. Casillas Rodríguez, La incapacidad mental y sus zonas intermedias: Manual práctico sobre las defensas para establecer la incapacidad mental del imputado, San Juan, 2006, pág. 2.

salvaguardando los derechos del Estado como ya hemos mencionado- y otra distinta es cuál ha de ser el valor probatorio de la prueba presentada y admitida. La Regla 74 busca evitar que el elemento sorpresa perjudique al Estado, asunto que no guarda relación con la admisibilidad y el valor probatorio de la prueba.

Por todo lo antes expuesto, resolvemos que la falta de prueba documental que evidencie un historial de insanidad mental, previo al hecho imputado, no provoca que se descarte la posibilidad de levantar la defensa de insanidad mental, al amparo de la Regla 74 de Procedimiento Criminal, *supra*.

IV

Por todo lo anterior, revocamos las sentencias emitidas por los foros *a quo* y devolvemos el caso al Tribunal de Primera Instancia para que actúe de conformidad con lo aquí resuelto.

Se dictará sentencia de conformidad.


                                        Erick V. Kolthoff Caraballo
                                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                  CC-2019-731    Certiorari

Juan G. Cotto García

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 18 de septiembre de 2020.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, revocamos las sentencias emitidas por los foros *a quo* y devolvemos el caso al Tribunal de Primera Instancia para que actúe de conformidad con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo